2020 IL App (1st) 182395-U

No. 1-18-2395

Order filed June 8, 2020

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 13 CR 18844 |
| | ) | |
| EDWARD MILLER, | ) | Honorable |
| | ) | Carol M. Howard, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE PIERCE delivered the judgment of the court.
Justices Hyman and Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant's sentence was not excessive where the court appropriately considered the mitigating and aggravating factors and the sentence was within the statutory range.

¶ 2    Defendant Edward Miller was found guilty of aggravated criminal sexual assault and sentenced to 15 years' imprisonment. On appeal, this court vacated his conviction, entered judgment on the offense of criminal sexual assault, and remanded for resentencing. *People v. Miller*, 2018 IL App (1st) 150847-U. On remand, the trial court sentenced defendant to 11 years'

imprisonment for criminal sexual assault. Defendant appeals, arguing that this sentence was excessive. We affirm.

¶ 3    Defendant was charged by indictment with five counts arising from an incident on July 17, 2012, including count I for aggravated criminal sexual assault, a Class X felony, against the victim, S.M. (720 ILCS 5/11-1.30(a)(3), (d)(1) (West 2012)).

¶ 4    During a pretrial hearing on the State's motion to admit proof of other crimes, L.I. testified that defendant sexually assaulted her on multiple occasions in 1989, when she was eight years old. The court permitted the State to call L.I. at trial to testify about one of those incidents, during which defendant allegedly made L.I. masturbate him until he ejaculated.

¶ 5    At trial, S.M. testified that she was 13 years old in July 2012. She knew defendant since she was five years old. Her older sister J.M. dated him in 2004. Defendant visited S.M.'s house once a month and called the house approximately twice a week. S.M. thought of defendant "[l]ike a big brother."

¶ 6    On July 17, 2012, at around 6 p.m., defendant took S.M. and her brothers, A.M. and C.M., to Douglas Park. At first, S.M. and her brothers played basketball, but later S.M. went by herself to the sprinklers. After 30 minutes, defendant told S.M. he would take everyone to the store for popsicles. Defendant approached S.M. to put her in the vehicle, then "grabbed" S.M. on her upper left arm "[f]orcefully," which surprised her because defendant had never grabbed her forcefully before.

¶ 7    S.M. entered the passenger seat of the vehicle and defendant drove four minutes to the other side of the park. S.M. and defendant were the vehicle's only occupants. Defendant stopped

the vehicle near "a bunch of trees" and told S.M. to go to the back. When S.M. refused, defendant threatened to "hit" her and balled his fist.

¶ 8     S.M. went to the bench seat in the back of the vehicle. Defendant laid her on her back, kissed her, and touched her chest and vaginal areas. He then turned her on her stomach, pulled down her pants, and pulled down his pants. Defendant inserted his penis into S.M.'s anus and began "rocking back and forth." S.M. was not sure if defendant ejaculated and did not know how long defendant was behind her rocking back and forth. Defendant stopped and told S.M. that if she told anyone what happened, he would "kill" her. He then drove back to pick up S.M.'s brothers. S.M. did not tell them what happened at this time because she was "scared."

¶ 9     When she arrived home, S.M. showered and did not tell anyone what happened. On July 18, 2012, she told her older brother A.M., who told their mother L.M. She called the police and took S.M. to the hospital.

¶ 10     On cross-examination, S.M. stated that it hurt when defendant penetrated her, and she stayed in the hospital overnight.

¶ 11     L.M. testified that defendant visited the house two or three times a month. On July 18, 2012, A.M. told L.M. what defendant did. L.M. called the police and took S.M. to the hospital. The next day, L.M. took S.M. to stay at S.M.'s grandmother's house, then returned home. The following morning, L.M. found defendant sleeping alone in her son's bed. She told A.M. to call the police, who arrested defendant. L.M. later discovered damage to her downstairs door.

¶ 12     Nurse Cynthia Reimer testified that she treated S.M. on July 18, 2012. S.M. complained that she was sexually assaulted when her assailant pushed her into the back seat of a vehicle, kissed her, pulled her pants down, and "put his privates inside her."

¶ 13    Nurse Kindra Nelson testified that she treated S.M. that night, took vaginal and anal swabs, and placed S.M.'s underwear, which had bodily fluid on it, in an evidence bag in a sexual assault kit. S.M. was "distressed" during the examination. On cross-examination, Nelson confirmed that medical records indicated "no tears" were found during S.M.'s treatment.

¶ 14    The State introduced stipulations regarding the chain of custody for the DNA evidence and called a forensic scientist who testified that defendant "cannot be excluded" from contributing a male DNA profile identified from the fluid on S.M.'s underwear. The State also entered a stipulation that, if called, L.I. would testify consistent with her testimony at the pretrial hearing.

¶ 15    Defendant called Chicago police detective Patricia Sullivan, who testified that she interviewed S.M. on July 20 or 21, 2012. After speaking to S.M., L.M., and A.M., Sullivan suspended the investigation, but it was continued after DNA results were available. On cross-examination, Sullivan testified that S.M. told her on July 20, 2012, that defendant penetrated her anus with his penis and that fluid came out.

¶ 16    At closing argument, the State emphasized that S.M. viewed defendant as a "family member" and trusted him, and defendant "took advantage of that," leaving S.M. feeling "hurt," "confused," and "betrayed." The court found defendant guilty of count I for aggravated criminal sexual assault, acquitted him of the remaining counts, and denied his motion for a new trial.

¶ 17    The presentence investigation (PSI) report showed that defendant was 53 years old at sentencing. He left high school in the tenth grade to join the navy, was honorably discharged, and earned his GED. Defendant had 21 prior convictions, including aggravated assault, burglary, and 10 convictions for theft or retail theft. He reported a good relationship with his parents and siblings, a fair relationship with his wife, from whom he lived apart, and "close" relationships with his three

children. Defendant worked in a restaurant from 2010 to 2013, and acknowledged a history of drug use.

¶ 18    At sentencing, defense counsel noted that defendant joined the Idea Program in jail. In aggravation, the State argued that defendant was "almost a family member" to S.M., who was only 13 years old when the crime occurred, while defendant was a "50-year-old" man. Counsel argued that anal rape was "particularly brutal" under these circumstances. Defendant was a man S.M. "trusted" and "loved," and the crime would therefore "color [S.M.'s] thought process in future relationships." The prosecutor also cited defendant's "extensive" criminal background and asked for the maximum Class X sentence of 30 years.

¶ 19    The State read L.M.'s victim impact statement into the record. In the statement, L.M. said defendant betrayed her family, and the situation had been "very hard" on S.M. and the rest of the family. Following the incident, S.M. needed counseling from the family's pastor and started fighting with her siblings.

¶ 20    In mitigation, defense counsel cited defendant's recent employment, remote criminal history, relationship with his children, and his GED. Counsel asked for the minimum sentence of six years.

¶ 21    The court stated that it reviewed the PSI and considered the factors in aggravation, including the nature of the offense. It emphasized that defendant had a "good relationship" with S.M.'s family, and his behavior represented a "violation of that trust." The court acknowledged it had to balance the aggravating factors against the mitigating factors of defendant's employment and "lack of any serious criminal offense immediately prior to this incident." It sentenced defendant to 15 years' imprisonment and denied his motion to reconsider sentence.

¶ 22    Defendant appealed, arguing, in relevant part, that the evidence was insufficient to establish the elements of aggravated criminal sexual assault because there was no evidence that he threatened or endangered the victim's or another's life during the assault. We vacated the conviction, entered judgment on the offense of criminal sexual assault, a Class 1 felony (720 ILCS 5/11-1.20(a)(1), (b)(1) (West 2012)), and remanded for resentencing. See *Miller*, 2018 IL App (1st) 150847-U.

¶ 23    At the resentencing hearing, the State adopted its aggravation arguments from the first sentencing hearing. The prosecutor also cited the evidence of a similar prior crime in defendant's history and asked for the maximum sentence of 15 years' imprisonment. In mitigation, defense counsel argued that defendant's sentence should be reduced because he did not perform "an overt act that threatened [S.M.] during" the offense. Counsel further contended that S.M. suffered no bruising or tearing, and that L.I.'s stipulated testimony did not deserve serious weight. Finally, defense counsel cited defendant's military service and emphasized his good behavior in prison, where he had passed the adult basic education course and attained certificates of achievement as a food handler and healthcare assistant. Counsel requested a sentence in the lower end of the applicable range.

¶ 24    The court sentenced defendant to 11 years' imprisonment, acknowledging that the charge had been reduced from to a Class 1 felony with a new sentencing range of 4 to 15 years. The court "carefully considered the factors in aggravation" which it set out in the first sentencing hearing, emphasizing again that the crime involved a "betrayal of trust" and the potential for "psychological trauma" to S.M. The court said that it also "must consider in mitigation" the rehabilitative steps defendant took while incarcerated.

¶ 25    Defendant filed a motion to reconsider sentence. At a hearing on the motion, defense counsel argued that the new sentence was excessive in light of the lack of physical "trauma" to S.M., defendant's age, the remoteness of his criminal history, and his good behavior in prison. Counsel also argued that 11 years was in the upper half of the Class 1 sentencing range, while the original 15-year sentence was in the lower half of the Class X sentencing range. The court stated it "carefully" considered the evidence when it issued the first sentence and had again "carefully" considered" the evidence and factors in aggravation and mitigation at resentencing. The court determined that, even "putting aside" the "other crimes evidence," an 11-year sentence was appropriate "[b]ased on what happened to [the] victim" in the present case. Consequently, the court denied defendant's motion.

¶ 26    On appeal, defendant argues that his sentence was excessive because the trial court imposed a sentence at the higher end of the statutory range although judgment had been entered on a lesser charge. Additionally, defendant contends the court failed to properly weigh new mitigating evidence and that no new aggravating factors existed.

¶ 27    The trial court must consider both the seriousness of the offense and the defendant's rehabilitative potential at sentencing. Ill. Const. 1970, art. I, § 11. A lower court's sentencing decision is reviewed for abuse of discretion on appeal and is granted considerable deference by the reviewing court. *People v. Alexander*, 239 Ill. 2d 205, 212-13 (2010). This is because the sentencing court is better situated to consider the "defendant's credibility, demeanor, moral character, mentality, environment, habits, and age." *People v. Snyder*, 2011 IL 111382, ¶ 36.

¶ 28    The seriousness of a defendant's crime is the most important consideration at sentencing. *People v. Cruz*, 2019 IL App (1st) 170886, ¶ 51. The sentencing court will be presumed to have

considered all relevant factors in mitigation, "absent some indication to the contrary other than the sentence itself." *People v. Thompson*, 222 Ill. 2d 1, 45 (2006). Mitigating factors such as rehabilitative potential are not entitled to greater weight than aggravating factors. *Alexander*, 239 Ill. 2d at 214 (citing *People v. Coleman*, 166 Ill. 2d 247, 261 (1995)). The reviewing court should not substitute its judgment for that of the sentencing court when weighing factors in mitigation and aggravation. *People v. Jones-Beard*, 2019 IL App (1st) 162005, ¶ 21. Further, the trial court is not required to reduce a sentence when a case is remanded for resentencing on a lesser charge. *People v. Raya*, 267 Ill. App. 3d 705, 708-09 (1994).

¶ 29    In this case, criminal sexual assault is a Class 1 felony with a sentencing range of 4 to 15 years. 720 ILCS 5/11-1.20(b)(1) (West 2012); 730 ILCS 5/5-4.5-30(a) (West 2012). Defendant's 11-year sentence is presumptively proper because it is within this range, and "will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *People v. Fern*, 189 Ill. 2d 48, 54 (1999).

¶ 30    Defendant argues, however, that his sentence is excessive because the trial court did not properly weigh his new mitigating evidence and the fact that his conviction for aggravated criminal sexual assault had been vacated and judgment was entered on a lesser charge. At the resentencing hearing, defense counsel informed the court that during defendant's imprisonment he had furthered his education and received certificates for his work in food sanitation and health care. In imposing the new 11-year sentence, the court acknowledged that defendant's charge had been reduced and that his good behavior in prison constituted new mitigating evidence. At the hearing on defendant's motion to reconsider the new sentence, the court stated that it considered all the factors in

mitigation and aggravation. It then upheld the sentence, emphasizing the potential for lasting psychological damage to S.M. and the betrayal inherent in defendant's conduct.

¶ 31    Based on this record, we find that that the trial court did not abuse its discretion in imposing the 11-year sentence. The court stated that it considered all the mitigating factors and, contrary to defendant's argument, specifically acknowledged defendant's new mitigating evidence and the reduced charge.

¶ 32    Additionally, the court weighed the seriousness of defendant's conduct as a significant aggravating factor, which was within its discretion. See *Cruz*, 2019 IL App (1st) 170886, ¶ 51. Defendant sexually assaulted a 13-year-old girl by manipulating his status as a trusted family friend. A reasonable court could consider this conduct "serious," and thus worthy of a significant sentence. Defendant's argument amounts to a request that this court substitute our judgment for that of the lower court by giving less weight to the seriousness of defendant's crime and more weight to his mitigating evidence, which is improper. See *Jones-Beard*, 2019 IL App (1st) 162005, ¶ 21.

¶ 33    Defendant further argues that his sentence for criminal sexual assault is excessive because it is in the higher end of the sentencing range for a Class 1 offense, while his initial sentence for aggravated criminal sexual assault was in the lower end of the sentencing range for a Class X offense. On remand, the trial court acknowledged the lesser charge and imposed a new sentence that was four years lower, despite not being required to reduce the sentence at all. See *Raya*, 267 Ill. App. 3d at 708-09. Given the circumstances discussed above, the new 11-year sentence was not "manifestly disproportionate to the nature of the offense." *Fern*, 189 Ill. 2d at 54. Therefore, this argument must fail.

¶ 34    Finally, we note that we cannot consider defendant's argument regarding the lack of recidivism amongst offenders in his age group because the report he cites was not part of the record on appeal. See *People v. Garcia*, 2017 IL App (1st) 133398, ¶ 35 ("this court cannot consider evidence that is not part of the record"); *People v. Heaton*, 266 Ill. App. 3d 469, 476 (1994).

¶ 35    As the trial court sufficiently considered the factors in mitigation and aggravation and the sentence was within the statutory range, defendant's sentence is affirmed.

¶ 36    Affirmed.