2019 IL App (1st) 162005
No. 1-16-2005
Opinion filed January 29, 2019

Second Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 22298 |
| | ) | |
| DANARIUS JONES-BEARD, | ) | Honorable |
| | ) | Arthur F. Hill, Jr., |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court, with opinion
Presiding Justice Mason and Justice Pucinski concurred in the judgment and opinion.

**OPINION**

¶ 1　Danarius Jones-Beard opted for a bench trial at which he was convicted of aggravated vehicular hijacking and armed robbery and sentenced to concurrent terms of 15 years' imprisonment. On appeal, Jones-Beard contends that his sentence is excessive. He also contends that his fines, fees, and costs order should be corrected. We affirm and modify the fines, fees, and costs order.

¶ 2　To prevail, Jones-Beard must affirmatively show the sentencing court failed to consider the relevant factors, but the record reflects that the trial court considered appropriate factors in aggravation and mitigation during the sentencing hearing. Also, the record and case law does not

support the argument that the trial court penalized Jones-Beard for choosing to exercise his right to stand trial. So we affirm.

¶ 3                                Background

¶ 4      Jones-Beard was charged by information with aggravated vehicular hijacking (720 ILCS 5/18-4(a)(3) (West 2014)) and two counts of armed robbery with a dangerous weapon other than a firearm (*id.* § 18-2(a)(1)). Before trial, defense counsel requested an Illinois Supreme Court Rule 402 conference. Ill. S. Ct. R. 402 (eff. July 1, 2012). At the conference, the trial court offered to sentence Jones-Beard to seven years' imprisonment in exchange for a guilty plea, but he rejected the offer. Jones-Beard waived his right to a jury; the case proceeded to a bench trial.

¶ 5      On December 10, 2014, Hang Li walked to his car with his roommate, Lu Wang. Li's car—a 1998 green Honda Accord—was parked on 30th Street, near the State Street intersection. When Li arrived at the driver's side door, he noticed a person, whom he identified in court as Jones-Beard, walking toward him from the opposite side of the street. As Jones-Beard approached, Li saw that he was holding a gun. Li quickly entered the car hoping to flee, but Wang was still standing outside. Li determined that he did not have time to flee so got out of the car. Jones-Beard pointed the gun at Li's stomach and demanded money. Li handed over $3 and Wang $5. Jones-Beard then demanded the car; Li gave him the key and Jones-Beard drove away. Li and Wang waited to make sure that Jones-Beard would not return before calling 9-1-1.

¶ 6      Later that day, Chicago police officer Thomas Murphy, while on patrol with Officer Brian Costanzo, saw Jones-Beard driving the green Honda without wearing a seatbelt. Murphy maneuvered behind and activated the emergency lights. Jones-Beard pulled into a parking lot. Murphy asked Jones-Beard for his driver's license and proof of insurance, which he could not produce. Murphy asked Jones-Beard to get out, and as he did, Murphy saw a black handgun on

the driver's seat. Costanzo took Jones-Beard into custody, and Murphy secured the firearm. On inspection, Murphy discovered the weapon was a "BB gun." Murphy described the BB gun as "heavy" and noted its similar size and weight to his service weapon. Costanzo searched the car and recovered $8 in the center console.

¶ 7    That evening, Li and Wang went to the 15th District police station. There, Detective Chris Blum spoke with them and asked that they view a physical lineup. After viewing the lineup, Li identified Jones-Beard. Li also identified the car and the currency he had given to Jones-Beard. Wang did not make any identification.

¶ 8    Blum interviewed Jones-Beard. Blum read him his *Miranda* rights, and Jones-Beard agreed to speak. Jones-Beard told Blum that he woke up that morning "cold and hungry" and "set out to rob someone." Holding a BB gun in his right hand, he approached two Chinese males and demanded their money and car key. The two men agreed, and gave Jones-Beard $8 and the key.

¶ 9    That evening, Assistant State's Attorney Brian Whang spoke to Jones-Beard. After their conversation, Jones-Beard agreed to memorialize his oral statement in writing. According to Jones-Beard's statement, he saw Li and Wang standing next to a green Honda sedan at the corner of 30th Street and State Street, at which time he resolved to steal the car. In the front right part of his jacket, Jones-Beard had a heavy black metal BB gun. Jones-Beard liked that it "looks like a real gun." He held the gun in his hand, partially covering it with the sleeve of his jacket. He approached Li and Wang and pointed the gun at Li. He demanded that they place their money on top of the car. He then demanded the car key. When they complied, he told them to walk away. He then drove off. Jones-Beard did not buckle his seatbelt and eventually the police pulled him

over. He was sitting on the BB gun and when he got out of the car, the officers saw the gun. The money he took from Li and Wang was in the car's center console.

¶ 10    At the close of the State's case, the court asked to handle the BB gun. After it had done so, the State rested.

¶ 11    The court found Jones-Beard guilty of all counts. In announcing its decision, the court noted that the BB gun "looks just like a gun." The court also noted that it was "heavy" and "could really, really hurt somebody as a bludgeon."

¶ 12    At sentencing, the court heard arguments in aggravation and mitigation. In aggravation, the State emphasized Jones-Beard's criminal history. As a juvenile, Jones-Beard was convicted of criminal damage to property and sentenced to probation. While on probation, he was convicted of burglary and incarcerated. His incarceration was later vacated, and he was sentenced to probation. Jones-Beard violated his probation three additional times. As an adult, Jones-Beard was convicted of attempted criminal sexual assault and sentenced to four years' imprisonment. At the time Jones-Beard committed the offenses in this case, he was on parole, having been released from prison just two months before. The State also highlighted that the presentence investigation (PSI) report reflected that Jones-Beard admitted to being a current gang member. The State acknowledged that Jones-Beard "didn't have the best childhood," but argued that he had been "given opportunity after opportunity" to rehabilitate, of which he did not avail himself. The State asked the court to sentence Jones-Beard to 15 years' imprisonment.

¶ 13    In mitigation, defense counsel argued that Jones-Beard should receive the minimum allowable sentence. Jones-Beard hurt no one, and at the time of the offenses was 21 years old. Jones-Beard had a troubled childhood, with no contact with his father and a drug-addicted mother. His grandfather raised him until, at age 16, the Department of Children and Family

Services removed him for unknown reasons. Ultimately, counsel argued that Jones-Beard had "been a product of the system" and a sentence greater than the minimum would not be rehabilitative.

¶ 14    In allocution, Jones-Beard apologized. He stated that he was "taking full responsibility" for his actions and not using his troubled past as an excuse.

¶ 15    In announcing its sentencing decision, the trial court noted that it considered every aspect of Jones-Beard's PSI, including his age and difficult childhood. Acknowledging Jones-Beard's time spent in DCFS care, the court noted the unexplained basis for his removal from his grandfather's care. The court said it also considered Jones-Beard's "extensive criminal history," including his adjudications as a juvenile and convictions as an adult. The court merged count III (armed robbery) into count II (armed robbery), and imposed concurrent terms of 15 years' imprisonment.

¶ 16    Jones-Beard filed a motion to reconsider his sentence, arguing its excessiveness, given the nature of the crime, and that his criminal history consisted largely of his juvenile adjudications. The court denied Jones-Beard's motion.

¶ 17                              Analysis

¶ 18    Jones-Beard first contends that his concurrent 15-year sentences are excessive, given the nonviolent nature of his offenses and the presence of several mitigating factors, including his troubled childhood and his age. He also contends that the trial court assessed a "trial tax" by sentencing him to concurrent terms of 15 years' imprisonment after having initially offered him a seven-year sentence in exchange for a guilty plea. He asks that we either reduce his sentence or remand for resentencing.

¶ 19                      Concurrent 15-Year Sentences

¶ 20    The Illinois Constitution requires that a trial court impose a sentence that reflects both the seriousness of the offense and the objective of restoring the defendant to useful citizenship. Ill. Const. 1970, art. I, § 11; *People v. McWilliams*, 2015 IL App (1st) 130913, ¶ 27. In reaching this balance, a trial court must consider a number of aggravating and mitigating factors, including the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. *People v. Alexander*, 239 Ill. 2d 205, 213 (2010).

¶ 21    In reviewing a defendant's sentence, this court will not reweigh the factors and substitute its judgment for that of the trial court merely because it would have weighed the factors differently. *People v. Busse*, 2016 IL App (1st) 142941, ¶ 20. The trial court has wide latitude to weigh the appropriate factors, which entitles it to deference. *Alexander*, 239 Ill. 2d at 212. An abuse of discretion exists where the sentence imposed is at great variance with the spirit and purpose of the law, or is manifestly disproportionate to the nature of the offense. *Id.* Absent some indication to the contrary, other than the sentence itself, we presume the trial court properly considered all relevant mitigating factors presented. *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 19.

¶ 22    Initially, we point out that Jones-Beard's concurrent 15-year sentences fall within the permissible statutory range of his offenses. See 730 ILCS 5/5-4.5-25(a) (West 2014) (for class X felonies, "[t]he sentence of imprisonment shall be a determinate sentence of not less than 6 years and not more than 30 years"); see also 720 ILCS 5/18-4(b) (West 2014) ("A violation of subsection (a)(3) is a Class X felony for which a term of imprisonment of not less than 7 years shall be imposed."); *People v. Wilson*, 2016 IL App (1st) 141063, ¶ 12; *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46. To prevail, Jones-Beard "must make an affirmative showing that the sentencing court did not consider the relevant factors." *People v. Burton*, 2015 IL App (1st)

131600, ¶ 38. The seriousness of the crime is the most critical factor in determining an appropriate sentence, not the presence of mitigating factors. *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002).

¶ 23    Jones-Beard cannot make this showing because the record reflects the court considered all evidence in mitigation. At the sentencing hearing, the court heard from defense counsel on Jones-Beard's age, difficult childhood, and counsel's belief that a prison term above the minimum would not aid in rehabilitating him. During the oral pronouncement, the court specifically mentioned it considered age, his mother's drug addiction, his father's absence, and the PSI, which includes all the mitigating factors Jones-Beard cites. The record shows the court was not persuaded by these mitigating factors in light of Jones-Beard's "extensive criminal history." See *People v. Evangelista*, 393 Ill. App. 3d 395, 399 (2009) ("defendant's criminal history alone would appear to warrant sentences substantially above the minimum"). In addition, a sentencing court need not state every factor it considered in determining a defendant's sentence. *People v. Gornick*, 107 Ill. App. 3d 505, 514 (1982).

¶ 24                                    "Trial Tax"

¶ 25    Next, Jones-Beard argues that his 15-year sentence reflects a "trial tax" imposed by the court as punishment for refusing the court's pretrial offer.

¶ 26    A trial court may not penalize a defendant for choosing to exercise his right to stand trial. *People v. Ward*, 113 Ill. 2d 516, 526 (1986). But, "the mere fact that the defendant was given a greater sentence than that offered during the plea bargaining does not, in and of itself, support an inference that the greater sentence was imposed as a punishment for demanding trial." See *People v. Carroll*, 260 Ill. App. 3d 319, 348-49 (1992) (collecting cases). Indeed, it must be "clearly evident" in the record that the harsher sentence resulted from the trial demand. *Ward*,

113 Ill. 2d at 526; *People v. Young*, 20 Ill. App. 3d 891, 894 (1974) (claim that defendant was penalized for demanding trial must be "clearly established by the evidence"). This evidence can come when a trial court makes explicit remarks concerning the harsher sentence (*Ward*, 113 Ill. 2d at 526 (citing *People v. Moriarty*, 25 Ill. 2d 565, 567 (1962)); *Young*, 20 Ill. App. 3d at 893-94), or where the actual sentence is outrageously higher than the one offered during plea negotiations (*People v. Dennis*, 28 Ill. App. 3d 74, 78 (1975)). In making this determination, we consider the entire record rather than focus on a few words or statements of the trial court. *Ward*, 113 Ill. 2d at 526-27.

¶ 27     Jones-Beard has presented no evidence, other than the sentence itself, showing his sentence as the product of a trial tax. Rather, Jones-Beard must demonstrate that the trial court imposed a sentence so outrageously higher than the one offered pretrial that the only conclusion can be that the trial court punished him for exercising his right to trial. See *Dennis*, 28 Ill. App. 3d at 78 ("We can only conclude that the sentence [20 times greater than the pretrial offer] was imposed as punishment for [defendant's] decision to reject the State's offer and chose instead a jury trial."). Jones-Beard's sentence, which amounts to just over a twofold increase from the pretrial offer, is not so outrageously disproportionate that we are left only to conclude that it was the product of a trial tax. See *Carroll*, 260 Ill. App. 3d at 349 ("[T]he sentence imposed was only 2½ times that which was offered to him at the pretrial conference; clearly, this does not approach the excessive nature of the sentence deemed an improper punishment in *Dennis*.").

¶ 28     Given this record, we conclude the trial court's offer, which was for the minimum term allowable, is best viewed as an acceptable "concession" afforded to Jones-Beard in exchange for his guilty plea. See *People v. Moss*, 205 Ill. 2d 139, 171 (2001) ("A court may grant dispositional concessions to defendants who enter a guilty plea when the public's interest in the effective

administration of justice would thereby be served."); *Ward*, 113 Ill. 2d at 526 ("Although it may be proper in imposing sentence to grant concessions to a defendant who enters a plea of guilty, a court may not penalize a defendant for asserting his right to a trial either by the court or by a jury."). Viewing the record as a whole, we can find no evidence that would "clearly show" the trial court's intention to punish Jones-Beard for exercising his right to trial. Consequently, we conclude that the trial court did not abuse its discretion and affirm Jones-Beard's concurrent 15-year terms.

¶ 29                                    Fines, Fees, and Costs

¶ 30    Jones-Beard next contends the assessed fines, fees, and costs should be reduced from $744 to $349. He argues that (i) the electronic citation ($5) fee and DNA ($250) fee should be vacated because they were improperly imposed and (ii) under section 110-14 of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-14(a) (West 2014)), he is entitled to presentence custody credit against several fines and assorted other assessments that are labeled "fees" but are actually "fines."

¶ 31    Initially, we note that Jones-Beard did not raise these challenges at trial, and they are, therefore, arguably forfeited. *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). He nevertheless argues that we should review his claim using any of the following means: (i) our authority under Illinois Supreme Court Rule 615(b), (ii) the second prong of the plain-error doctrine, or (iii) a holding that his trial counsel was ineffective for failing to object to the imposition of the improper fees. The State acknowledges that, even though Jones-Beard forfeited his claims by failing to raise them in the trial court, recent decisions suggest that we may review them.

¶ 32    We disagree with the parties that Jones-Beard's challenge is reviewable under plain error or that we may review these unpreserved errors under Rule 615(b). See *People v. Smith*, 2018 IL

App (1st) 151402, ¶ 5. We need not determine whether Jones-Beard's counsel was ineffective for failing to object to the erroneous assessments because the rules of forfeiture and waiver also apply to the State, and where the State fails to argue that Jones-Beard has forfeited the issue, it waives the forfeiture. *People v. Bridgeforth*, 2017 IL App (1st) 143637, ¶ 46. We review *de novo* the propriety of a court-ordered fine or fee. *People v. Bryant*, 2016 IL App (1st) 140421, ¶ 22.

¶ 33    First, the parties agree, and we concur, that the $5 electronic citation fee (705 ILCS 105/27.3e (West 2014)), and the $250 state DNA identification system fee (730 ILCS 5/5-4-3(j) (West 2014)) must be vacated. The electronic citation fee does not apply to felonies and is, therefore, inapplicable to Jones-Beard's felony convictions for aggravated vehicular hijacking and armed robbery. The DNA fee was also improperly assessed because Jones-Beard's DNA is already in the Illinois database as a result of his prior felony conviction. See *People v. Marshall*, 242 Ill. 2d 285, 303 (2011) (finding fee authorized only when defendant not registered in DNA database). Accordingly, we vacate the erroneous charges.

¶ 34    Jones-Beard next asserts that seven of the assessments imposed against him are fines subject to offset by his presentence incarceration credit. See *People v. Jones*, 223 Ill. 2d 569, 599 (2006) ("[T]he credit for presentence incarceration can only reduce fines, not fees."). A defendant incarcerated on a bailable offense who does not supply bail, and against whom a fine is levied, receives a credit of $5 for each day spent in presentence custody. 725 ILCS 5/110-14(a) (West 2016). "Broadly speaking, a 'fine' is a part of the punishment for a conviction, whereas a 'fee' or 'cost' seeks to recoup expenses incurred by the state ***." *Jones*, 223 Ill. 2d at 582. The most important factor, therefore, is whether the charge seeks to compensate the State for any costs incurred as a result of prosecuting the defendant. *People v. Graves*, 235 Ill. 2d 244, 250

(2009). Jones-Beard spent 561 days in presentence custody, entitling him to up to $2805 in credit.

¶ 35    The parties agree that two of the fees assessed against Jones-Beard, the $50 court system fee (55 ILCS 5/5-1101(c) (West 2016)) and the $15 state police operations fee (705 ILCS 105/27.3a(1.5) (West 2016)), are actually fines and should be offset by Jones-Beard's presentence credit. We concur. See *People v. Blanchard*, 2015 IL App (1st) 132281, ¶ 22 ("[W]e hold that the $50 court system fee imposed in this case pursuant to section 5-1101(c) is a fine for which defendant can receive credit for the *** days he spent in presentence custody.").

¶ 36    The parties dispute whether the five remaining charges are fines rather than fees because they do not reimburse the State for the costs incurred in prosecuting Jones-Beard. Specifically, Jones-Beard identifies the following charges as fines subject to offset by his presentence incarceration credit: the $190 felony complaint fee (705 ILCS 105/27.2a(w)(1)(A) (West 2016)), the $15 clerk automation fee (*id.* § 27.3a(1)), the $25 document storage fee (*id.* § 27.3c(a)), the $2 state's attorney records automation fee (55 ILCS 5/4-2002.1(c) (West 2016)), and the $2 public defender records automation fee (*id.* § 3-4012).

¶ 37    In considering challenges to three of these assessments, we have held they are fees because they are " 'compensatory' " and represent a " 'collateral consequence' " of a defendant's conviction. *People v. Brown*, 2017 IL App (1st) 150146, ¶ 39 (quoting *People v. Tolliver*, 363 Ill. App. 3d 94, 97 (2006)); *Smith*, 2018 IL App (1st) 151402, ¶ 15. Our supreme court recently affirmed that conclusion, finding those assessments are fees rather than fines. *People v. Clark*, 2018 IL 122495, ¶ 51. Accordingly, we hold that these charges are fees not subject to offset by Jones-Beard's presentence incarceration credit.

¶ 38   Jones-Beard's remaining contention asks for credit against the $2 state's attorney records automation fee and the $2 public defender records automation fee. This court has found that these assessments are fines because they do not compensate the State for the costs associated with prosecuting a particular defendant. *People v. Camacho*, 2016 IL App (1st) 140604, ¶ 56. But, in *Clark*, our supreme court overruled *Camacho*, holding that both assessments are fees. *Clark*, 2018 IL 122495, ¶ 22. The court noted that the public defender's office is a "vital and necessary part of the criminal justice system" because the "State could not effectively prosecute criminal defendants without the existence of an indigent defense system. *Id.* ¶ 21 (citing *Gideon v. Wainwright*, 372 U.S. 335, 345 (1963)). Maintaining that office "is a cost common to all prosecutions, regardless of whether or not a particular defendant has or finds the resources to hire private counsel." *Id.* Because the public defender's office is "necessary to every prosecution and automating records is a cost necessary to that office, automating records is a cost 'incurred as the result of prosecuting the defendant.' " *Id.* ¶ 22 (quoting *Graves*, 235 Ill. 2d at 250). Thus, the $2 public defender records automation fee constitutes a compensatory fee, and not a fine.

¶ 39   The court applied similar reasoning in finding the $2 state's attorney records automation assessment is a fee, noting that "[e]very prosecution necessarily involves the state's attorney and necessarily generates records, which must be automated." *Id.* ¶ 27. "[A]utomating the state's attorney's record keeping system is a cost related to prosecuting defendants, and this charge is a compensatory fee" not subject to presentence credit. *Id.* Thus, based on *Clark*, Jones-Beard is not entitled to presentence custody credit for the $2 state's attorney or public defender records automation fees.

¶ 40   To summarize, we vacate the erroneously assessed $5 electronic citation fee and the $250 state DNA identification system fee; we also offset $65 in fines that are subject to Jones-Beard's

presentence credit. But we find the remaining charges are fees not subject to presentence incarceration credit. The fines, fees, and costs order should reflect a new total due of $424. Pursuant to Illinois Supreme Court Rule 615(b)(1), we direct the clerk of the circuit court to modify the fines, fees, and costs order accordingly. The judgment of the circuit court is affirmed in all other respects.

¶ 41    Affirmed; fines, fees, and costs order corrected.