2021 IL App (1st) 192478-U

No. 1-19-2478

Order filed November 12, 2021

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 999 |
| | ) | |
| LAVERT PITTS, | ) | Honorable |
| | ) | Mary Margaret Brosnahan, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE SHARON ODEN JOHNSON delivered the judgment of the court.
Presiding Justice Pierce concurred in the judgment.
Justice Mikva dissented.

**ORDER**

¶ 1    *Held*:  Defendant's 30-year extended-term prison sentence is affirmed over his contention that the trial court failed to give adequate consideration to mitigating evidence.

¶ 2    Following a jury trial, defendant Lavert Pitts was found guilty of second-degree murder and sentenced to an extended term of 30 years' imprisonment. On appeal, defendant argues his sentence was excessive because the trial court failed to give adequate consideration to the significant mitigating factors in his favor, including the fact that he saved a fellow inmate's life

and had supportive family members dedicated to his successful reentry into society. For the following reasons, we affirm.

¶ 3    Defendant was charged by indictment with six counts of first degree murder stemming from the shooting death of Monte Tillman on May 26, 2014. At trial, defendant raised the affirmative defense of self-defense. Because defendant does not challenge the sufficiency of the evidence to sustain his conviction, we recount the facts here to the extent necessary to resolve the issue raised on appeal.

¶ 4    At trial, Christopher Crowder testified that around 3 p.m. on May 26, 2014, he and Tillman were outside a car wash on the 5200 block of Lake Street. Tillman had a firearm in his waistband. At some point a vehicle containing two women approached Tillman and he talked to them through the passenger window. Crowder was approximately 15 to 20 feet from Tillman when he saw defendant, with his right hand in his pocket, walk quickly around a corner towards Tillman. When defendant reached Tillman, he removed his hand from his pocket, and shook hands with Tillman. After they shook hands, Tillman turned around and continued talking to the women in the vehicle. Defendant walked half a foot to two feet from Tillman then retrieved a firearm from his right pocket and shot Tillman. Defendant continued to shoot at Tillman, who ran behind the trunk of a vehicle, retrieved a firearm, and returned fire. Tillman gave his firearm to Crowder before retreating into the car wash, and Crowder shot at defendant, who ran away shooting back at Crowder. Crowder was on parole at the time of the incident and agreed to testify in exchange for immunity.

¶ 5    Crowder identified surveillance video footage from the car wash as a true and accurate recording of the incident as it happened, and the footage was published to the jury. Crowder

testified it showed Tillman standing on the passenger side of a vehicle talking to the occupants, and defendant walking towards Tillman with his right hand in his pocket.[1]

¶ 6    Dr. Ponni Arunkumar testified that on May 27, 2014, she performed the autopsy on Tillman and determined the cause of death was a gunshot wound to the flank and the manner of death was homicide.

¶ 7    Defendant testified that in May 2014, he knew Tillman for 15 or 16 years. Defendant related that about a week prior to the murder, Tillman shot two of defendant's friends and threatened to harm defendant. Defendant began carrying a .38-caliber revolver for protection. On May 26, 2014, defendant and his friends were driving to the car wash when they spotted Tillman standing out front. Defendant instructed his friends to park down the street so he could "diffuse the situation" with Tillman. Defendant approached Tillman and shook his hand. Afterwards, Tillman turned and reached for his firearm, so defendant retrieved a firearm from his pocket and shot. Defendant then fled. Defendant acknowledged that he had prior felony convictions, including an armed robbery in 2008 and a bank robbery in 2016.

¶ 8    The jury found defendant guilty of second-degree murder. Defendant filed a motion and an amended motion for a new trial, which the trial court denied.

¶ 9    Prior to the sentencing hearing, a presentence investigation report (PSI) was prepared and distributed to the parties. The PSI reflects that defendant reported he was born on December 2, 1990, to unwed parents, and was one of 10 children to his mother. He had a good relationship with his mother, and his father is deceased. His childhood was normal, and his needs were met.

---

[1] The video is included in the record on appeal. However, this court was unable to view it due to technical issues.

Defendant reported that his highest level of education was eighth grade, but he would like to earn his GED. Defendant has been diagnosed with depression and attention deficit, hyperactivity disorder (ADHD) for which he was prescribed medication and under psychiatric care in prison. He is unmarried and without children. He did not report current substance use, but previously used phencyclidine (PCP) from age 12 until his May 2014 incarceration. He described himself as a law-abiding citizen. His criminal history consisted of the following: a 2008 armed robbery for which he was sentenced to six years' imprisonment; a 2013 possession of a controlled substance for which he was sentenced to 18 months' imprisonment; and a 2016 federal case of bank robbery involving multiple counts. In the federal case, he was sentenced to 60 months' imprisonment on each of three counts, to be served concurrently with any sentence imposed in the instant case, and to 84 months' imprisonment on one count that included use of a firearm, to be served consecutively to both the 60-month sentence and any sentence imposed in the instant case.

¶ 10 In aggravation, the State entered defendant's federal plea agreement. The agreement reflects that on April 19, May 9, and May 27, 2014, defendant brandished a .38-caliber revolver inside multiple banks while demanding money, taking $8,509, $1,600, and $3,186, respectively. On April 12, 2014, defendant brandished a .38-caliber revolver at a food mart while demanding money. On April 13, 2014, he brandished a .38-caliber revolver at a food mart and a liquor store while demanding money. On April 16, 2014, he brandished a .38-caliber revolver at a dollar store while demanding money. On May 8, 2014, he attempted to use a .38-caliber revolver to rob a bank, and later that day successfully robbed a restaurant. On May 29, 2014, he brandished a .38-caliber revolver at a bank while demanding money, taking over $6,460. The State also provided information regarding defendant's juvenile record, which included three counts of aggravated

robbery, possession of a controlled substance, possession of a stolen motor vehicle, multiple probation violations, and an unsatisfactory termination of probation.

¶ 11    The State asked the trial court to consider the facts of the case, specifically that defendant armed himself with a firearm and murdered Tillman on the street, as well as defendant's criminal history. The State noted that the facts of the case and defendant's background contradicted his description of himself in the PSI as a law-abiding citizen. The State asked for the maximum extended sentence of 30 years' imprisonment.

¶ 12    Defendant's mother, Desire Bryant, testified that she abused drugs when defendant was younger, so he and his nine siblings were raised by his grandmother. She and defendant's sisters–– Laverta Pitts, Joleen Reese, and Juanita Bryant–all testified that they would support defendant upon his release from prison.[2] Desire added that defendant could live with her, and Juanita offered him her expertise in teaching students with behavioral issues.

¶ 13    In mitigation, defense counsel emphasized that the jury found that defendant acted in unreasonable self-defense. Counsel also argued that defendant had mental health problems, and his mother and sisters, one of whom worked in a mental health capacity, would help him upon his release from prison. Counsel then read a statement from Assistant United States Attorney (AUSA) Heather McShane explaining how defendant cooperated in a federal investigation, was key in identifying his codefendant, and assisted an inmate during a prison attack. AUSA Barry Jones believed that defendant's actions may have saved that inmate's life. Counsel concluded by arguing that while defendant was "far from perfect," he was essentially a good person when properly medicated and had potential for rehabilitation.

---

[2] Because Desire and Juanita share the same last name, we refer to them by their first name

¶ 14    In allocution, defendant stated that if he had not protected himself that day, he would be dead, and Tillman would be on trial. He accepted responsibility for his actions, but asserted he never intended to harm Tillman. Tillman was defendant's "good friend," and this was not an act of hate or assassination. He continued, "[Tillman] was cool with the lifestyle he lived. This is what comes with the street lifestyle." Defendant stated that Tillman was not an "innocent man" and asked for forgiveness.

¶ 15    In announcing sentence, the court stated that it would consider the evidence at trial, the PSI, arguments in aggravation and mitigation, the witnesses, defendant's statement in allocution, and the statutory factors. The court then recited and considered each of the statutory factors in mitigation (730 ILCS 5/5-5-3.1(a) (West 2014)). Considering whether defendant acted under a strong provocation or there were substantial grounds tending to excuse or justify his criminal conduct, the court noted the jury's verdict that although defendant may have had some grounds for his actions, they were unreasonable. In considering whether defendant had no history of prior delinquency or criminal activity or had led a law-abiding life for a substantial period of time before the commission of the present crime, the court highlighted defendant's "unremitting course of criminal conduct."

¶ 16    Based on defendant's past, the court believed his criminal conduct was likely to recur. Considering whether defendant's character and attitudes indicated that he was unlikely to commit another crime, the court noted that defendant believed his actions were justified and that he had no choice. However, video evidence showed Tillman had his back to defendant and was talking to people inside a vehicle when defendant approached and began shooting. The court acknowledged that defendant's incarceration would be a hardship on his family, but noted he had no dependents.

¶ 17    The trial court then considered the factors in aggravation (730 ILCS 5/5-5-3.2(a) (West Supp. 2013)), finding that the evidence "speaks for itself" regarding whether defendant's conduct caused or threatened serious harm. The court then discussed the third factor, defendant's history of prior delinquency or criminal activity, at length. The court noted that although it would consider "the research with respect to juveniles," defendant received probation several times in relation to narcotics convictions, had three aggravated robbery convictions from 2002, and a "stolen car case from 2003." The court stated that defendant had thus been taking property from others since 2002. As an adult, he was sentenced to six years' imprisonment for armed robbery with a firearm in 2008. The court remarked that that was "a very serious offense *** that would rank right under there after first degree murder." Defendant was then convicted of possession of a controlled substance. The remaining factors did not apply or were not of particular significance.

¶ 18    Referencing defendant's federal plea agreement, the trial court recounted that he committed and attempted to commit multiple robberies with a firearm between April 12 and May 29, 2014, taking thousands of dollars and, in one case, firing a shot at a cashier. The court noted, "I've actually at this point almost lost count of the number of times that [defendant] has pointed a gun at some civilian and demanded money." The court noted these incidents all occurred around the same time as the instant offense, remarking, "I don't think it overstates the case to state that he was *** a one man crime wave."

¶ 19    The trial court stated that it believed extended-term sentences rarely applied, and that it would consider the jury's second-degree murder verdict along with all the facts in aggravation and mitigation. The court noted that not all felonies are equal, and "when you put a gun to a citizen wherever they may be working in a bank, working in a store, you know, that's a very, very, very

serious thing. And in the case before the court, \*\*\* the defendant was found guilty of killing \*\*\* Tillman. And before that there's a prior armed robbery from 2008 that is in defendant's background." The court then determined that defendant's "very, very serious background" was "exactly what an extended term sentence was fashioned for" and sentenced him to the maximum extended term of 30 years' imprisonment.

¶ 20     Defendant filed a motion to reconsider his sentence, arguing at the hearing on the motion that the trial court failed to consider that: he stopped a "brutal attack" on an inmate, saving that inmate's life; had significant mental health issues; and did not commit any crimes between 2011 and 2014. The court noted that defendant was convicted of felony possession during that time. Defense counsel responded, "that was a form of self-medication."

¶ 21     The trial court denied defendant's motion, stating that this was a very rare case in which an extended-term sentence applied. The court explained that it considered all the factors in mitigation, including testimony from defendant's family, the AUSA's statement, and defendant's mental health, but the facts of this case combined with defendant's background and the other factors in aggravation led the court to believe the sentence was appropriate.

¶ 22     On appeal, defendant argues his 30-year maximum extended-term sentence was excessive because the trial court failed to adequately consider the significant mitigating factors in his favor.

¶ 23     A trial court's sentencing decision is reviewed for an abuse of discretion. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). A sentence is considered to be an abuse of discretion where it is "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." (Internal quotation marks omitted.) *Id.* Because the sentencing court is better situated to consider the "defendant's credibility, demeanor, moral character, mentality,

environment, habits, and age," (*People v. Snyder*, 2011 IL 111382, ¶ 36), its decision is granted considerable deference by a reviewing court (*Alexander*, 239 Ill. 2d at 212-13)). Accordingly, a reviewing court "must not substitute its judgment for that of the trial court merely because it would have weighed [the] factors differently." (Internal quotation marks omitted.) *Alexander*, 239 Ill. 2d at 213.

¶ 24 Here, we find that the trial court did not abuse its discretion in sentencing defendant to an extended term of 30 years' imprisonment. In this case, defendant was convicted of second degree murder, a Class 1 felony with a normal sentencing range of not less than 4 and not more than 20 years' imprisonment. 720 ILCS 5/9-2 (West 2014); 730 ILCS 5/5-4.5-30(a) (West 2014). However, based upon defendant's criminal history, he was eligible for an extended-term sentence with a sentencing range of not less than 15 and not more than 30 years. 730 ILCS 5/5-8-2(a) (West 2014); 730 ILCS 5/5-4.5-30(a) (West 2014). Therefore, although defendant received the maximum 30-year sentence, it is presumed to be proper because it falls within the statutory guidelines. See *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46 (a sentence that falls within the statutory range is "presumed to be proper"). As such, it "will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." See *People v. Fern*, 189 Ill. 2d 48, 54 (1999).

¶ 25 Defendant concedes that his sentence falls within the applicable statutory guidelines, but argues it is excessive in light of certain mitigating factors, specifically his disadvantaged childhood and his rehabilitative potential, as demonstrated by his cooperation with federal law enforcement authorities, heroism in saving a fellow inmate's life, supportive family members dedicated to his reentry into society, and remorse for his actions.

¶ 26     A sentence should reflect both the seriousness of the offense and a defendant's rehabilitative potential. Ill. Const. 1970, art. I, § 11. Still, the seriousness of the offense, not mitigating evidence, is the most important consideration at sentencing. *People v. Cruz*, 2019 IL App (1st) 170886, ¶ 51. It is presumed that the trial court considered all relevant factors in mitigation, absent some indication to the contrary other than the sentence itself. *People v. Jones-Beard*, 2019 IL App (1st) 162005, ¶ 21. The reviewing court should not substitute its judgment for that of the trial court when weighing the mitigating and aggravating factors. *Id.*

¶ 27     Here, defendant has failed to overcome the presumption that the trial court properly considered the sentencing factors. As mentioned, it is presumed that the trial court considered all relevant sentencing factors, absent some contrary indication, which defendant fails to provide. See *id.* In fact, the record shows that the trial court expressly considered all the statutory mitigating factors, where it recited each factor, determined whether it applied in defendant's case, and then addressed each applicable factor.

¶ 28     The record also shows the court considered the mitigating evidence defendant now raises on appeal. At the sentencing hearing, defendant's mother testified that she was unable to raise defendant due to her drug use, and defendant's PSI noted his use of PCP starting when he was a child. Thus, the court was made aware of the difficult circumstances of defendant's youth. The court likewise heard defendant's argument in mitigation that he cooperated with federal law enforcement to prosecute his codefendant in another case, and that he potentially saved the life of a fellow inmate while incarcerated. The court was also made aware of defendant's supportive family and that he would be returning home to them as evidenced by his mother and sisters' testimonies. In addition, when considering, and ultimately denying, defendant's motion to

reconsider his sentence, the court specifically noted that it considered the evidence from the AUSAs and testimony from defendant's family, but found it was greatly outweighed by the evidence in aggravation. The court also stated that it considered defendant's statement in allocution but found that it only showcased his lack of remorse. Thus, the record shows the court considered the mitigating factors and evidence defendant raises on appeal and defendant has not pointed this court to anything in the record demonstrating otherwise.

¶ 29    Further, the court considered defendant's mitigating evidence but, as it was required to do, balanced that evidence against the aggravating factors. In doing so, the court discussed defendant's criminal background, which notably included prior use of a firearm towards others on multiple occasions. In particular, the court emphasized that defendant committed a string of robberies using a firearm all within a few months of the instant crime, thus evidencing a pattern of criminal conduct escalating to murder. See *People v. Evangelista*, 393 Ill. App. 3d 395, 399 (2009) ("criminal history alone" may "warrant sentences substantially above the minimum"). The court also recounted the evidence showed Tillman had his back to defendant and was talking to people inside a vehicle when defendant approached and began shooting, ultimately causing Tillman's death. See *People v. Jackson*, 2014 IL App (1st) 123258, ¶ 53 ("[T]he seriousness of an offense is considered the most important factor in determining a sentence."); *People v. Sandifer*, 2017 IL App (1st) 142740, ¶ 82 ("the trial court need not give [a] defendant's potential for rehabilitation greater weight than the seriousness of the offense, which is the most important factor in determining a sentence").

¶ 30    As such, the court appropriately weighed the mitigating factors against the factors in aggravation and placed the greatest weight on defendant's extensive criminal history and the

seriousness of the offense. Given this record, defendant's arguments on appeal essentially amount to a request that we reweigh those factors. However, we will not substitute our judgment for the trial court's simply because we may have weighed them differently. See *Jones-Beard*, 2019 IL App (1st) 162005, ¶ 21. In light of the facts of this case, and the trial court's proper consideration of the mitigating and aggravating factors, we cannot find that defendant's sentence is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. *Fern*, 189 Ill. 2d at 54. Accordingly, we find no abuse of discretion.

¶ 31    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 32    Affirmed.

¶ 33    JUSTICE MIKVA, dissenting:

¶ 34    I respectfully dissent. It is clear to me that, in giving Mr. Pitts the maximum possible extended-term sentence of 30 years, the trial court failed to take several significant mitigating facts into consideration.

¶ 35    One of the most significant of these mitigating considerations was Mr. Pitts's extensive cooperation with the federal authorities. While the trial court understandably gave weight to the fact that Mr. Pitts engaged in a series of recent robberies that led to his federal prosecution, the record reflected that he also provided significant cooperation to the federal authorities in that case. Mr. Pitts's counsel read excerpts from statements made by Heather McShane, the Assistant United States Attorney (AUSA) who prosecuted the federal case against him, who stated on the record that Mr. Pitts assisted extensively in a federal investigation that led to the arrest of a man that the federal government considered to be a "career offender" and that Mr. Pitts "provided complete and truthful information at every juncture" to the federal government.

¶ 36  Another significant mitigating fact was that Mr. Pitts had recently saved the life of a fellow inmate. AUSA McShane also explained, in the excerpts of her statements read to the trial judge in this case, that Mr. Pitts saw a crowd standing around the entrance to a cell door, while inside the cell one inmate was beating another. Mr. Pitts "pulled the aggressor off the victim and pulled him out of the cell into another cell." Another AUSA, Barry Jones, who prosecuted that assault case, confirmed that Mr. Pitts had saved that man's life. He also confirmed that Mr. Pitts testified before the grand jury in that case and that Mr. Pitts would have been a witness for the government at trial had that case not ended in a guilty plea.

¶ 37  A third mitigating circumstance was that Mr. Pitts had significant family support. His mother testified at the sentencing hearing that, while she had been unable to provide Mr. Pitts with a stable childhood, she was now sober, and Mr. Pitts had a home with her when he was released from prison. She promised the trial judge that she would support him "in every way." Three of Mr. Pitts's sisters also testified that they would provide him with constant support when he was released from prison. One of those sisters testified that she has a degree in human services with a concentration on family and children so that she could help Mr. Pitts access mental health services.

¶ 38  A fourth mitigating factor was that Mr. Pitts had struggled with mental health issues throughout his childhood and much of his adult life. As his attorney summarized the situation at the sentencing hearing: Mr. Pitts has "qualities that make him good," and he uses those qualities "when he is properly medicated."

¶ 39  A final mitigating factor was Mr. Pitts's difficult childhood. As noted above, Mr. Pitts's mother struggled with addiction, and Mr. Pitts was largely raised by his great-grandmother. He started using PCP at the age of 12 and only attended school until the eighth grade.

¶ 40  I am aware that, except for the mental health concern, these considerations are not expressly

listed in the mitigating factors set out in our sentencing statute. 730 ILCS 5/5-5-3.1 (West 2020). However, we have long understood that those listed factors are not exclusive. *People v. Brunner*, 2012 IL App (4th) 100708, ¶ 49. As this court recognized in *Brunner*, "[a]lthough the plain language of sections 5–5–3.1 and 5–5–3.2(a) of the Unified Code mandates that, if present, the trial court must *consider* the enumerated 13 mitigating and 22 aggravating factors, respectively, in determining a sentence of imprisonment, those factors are not an exclusive listing that prohibits a court from considering any other relevant sentencing factor." (Emphasis in original.) *Id.* Indeed, the trial court in this case stated, in the hearing on the motion to reconsider Mr. Pitts's sentence, that it had taken them into consideration.

¶ 41 While trial courts have broad discretion to consider the weight to be given to any factor in mitigation, in this case, none of this mitigation appears to have been given any weight at all. If this significant mitigation had been any part of the calculation of the appropriate sentence, we would expect a sentence that fell somewhere below the maximum possible sentence. For this reason, the sentence imposed was, in my view, an abuse of discretion. Accordingly, I would reverse and remand for resentencing.