2025 IL App (1st) 230677-U

No. 1-23-0677

Order filed April 4, 2025

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CR 16566 |
| | ) | |
| DAVID MCCARTHY, | ) | Honorable |
| | ) | Laura Ayala-Gonzalez, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court.
Justices C.A. Walker and Gamrath concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm defendant's 30-year sentence for aggravated kidnapping over his contention that the sentence is excessive.

¶ 2    After a bench trial, David McCarthy was convicted of aggravated kidnapping while armed with a firearm (720 ILCS 5/10-2(a)(6) (West 2018)) and aggravated battery while knowingly discharging a firearm (720 ILCS 5/12-3.05(e)(1) (West 2018)) and sentenced to concurrent terms of 30 years' and 10 years' imprisonment, respectively. On appeal, he contends that his 30-year

sentence for aggravated kidnapping is excessive because the trial court did not adequately weigh mitigating factors. We affirm. McCarthy's 30-year sentence, which is at the lower end of the statutory range, effectively balances all aggravating and mitigating factors, and does not represent an abuse of discretion.

¶ 3                                     Background

¶ 4     McCarthy was charged by indictment with attempted murder, aggravated kidnapping, aggravated battery, unlawful possession of a weapon by a felon, and aggravated unlawful use of a weapon.

¶ 5     At trial, McCarthy's ex-wife, Tabatha McCarthy, testified that she and McCarthy were married in 2005 and separated in 2010. They co-parented their son during their separation until Tabatha blocked McCarthy's number in 2018 following his eighth-grade graduation. (Because Tabatha McCarthy shares the same last name as defendant, we refer to her by her first name.) McCarthy was still able to communicate with his son.

¶ 6     In October 2019, Tabatha had not seen or heard from McCarthy since June 2018. Around 7:30 a.m., while walking to her bus stop, McCarthy approached her and "brandished" a firearm. He accused her of keeping their son from him and "mess[ing] up his life." McCarthy motioned with the firearm toward Tabatha's home and said, "Let's take a walk." As they walked, McCarthy told Tabatha to enter his car. She ran into the street toward a passing vehicle, waving her hands and screaming, but the vehicle drove around her. McCarthy pulled Tabatha toward the passenger side of his car, but the door handle was missing. He then attempted to pull her to the driver's side door and tried to push her in. Tabatha resisted. McCarthy told her, "Get in the car, or I'll blow your f***ing head off." "Terrified," she backed away from McCarthy onto a grassy area between

the sidewalk and the curb. As they continued arguing, Tabatha spoke loudly and looked for help. McCarthy said, "I know what you're trying to do." He again demanded she get into his car, pointed his firearm at her, and shot her in the leg. Tabatha fell to the ground, screaming for help. She did not see McCarthy leave, but he was not there when she regained consciousness.

¶ 7    The State published a video clip from a doorbell camera, showing Tabatha and McCarthy arguing as they walked down the street. A second clip included audio of Tabatha screaming and a gunshot. After the shooting, McCarthy's car is seen moving through the frame. The State also published the audio of Tabatha's call to 911 after McCarthy shot her.

¶ 8    Tabatha underwent surgery on her left knee to remove the bullet and bone fragments. Afterward, she used walking aids and attended physical therapy for several months. She lost some sensation in her leg.

¶ 9    Mike Scola testified during the State's case-in-chief and rebuttal that he had known Tabatha and McCarthy for around 16 years and had employed McCarthy. At the time of the incident, he had not been in contact with Tabatha for seven or eight years. On the morning of the incident, Scola parked next to his office. McCarthy parked behind him and "started screaming something." McCarthy demanded money and Scola refused. They argued for several minutes. On seeing a firearm on the seat of McCarthy's car, Scola agreed to withdraw cash from the bank next door and walked down an alley to get there with McCarthy following in his car. McCarthy parked outside the lobby, and looked at Scola inside the bank before driving away. McCarthy never mentioned Tabatha. The State published surveillance footage of the parking area where the argument occurred as well as the alley.

¶ 10    Chicago police officer testified he arrested McCarthy and recovered a firearm from McCarthy's car. A forensic science supervisor with the Illinois State Police testified that McCarthy's DNA was on the firearm police recovered. A firearms examiner with the Illinois State Police testified that a bullet fragment recovered from Tabatha's leg matched bullets fired from the recovered firearm.

¶ 11    McCarthy testified that he went to see Tabatha that morning to discuss her role in his relationship with their son. He approached Tabatha as she walked down the street and tried to tell her he felt hurt that their son had stopped talking to him. Tabatha suggested they speak with the boy, and they walked toward her home. On the way, Tabatha became "emotional" and loudly denied responsibility for the lack of contact. She ran into the street, yelling "Help me" to a passing vehicle. The vehicle stopped, Tabatha spoke to the driver, then drove off. McCarthy asked her what she was doing, and she "just got hysterical" and fell to the ground, "whooping and hollering."

¶ 12    McCarthy said he carried a firearm in his waistband for protection because he worked in dangerous neighborhoods. As he tried to help Tabatha, he felt his firearm loosening and readjusted it in his waistband. His firearm "went off," tearing a hole in his pants and shooting Tabatha in the leg. McCarthy panicked, ran back to his car, and drove away. He denied threatening Tabatha or intending to hurt her. He went to see Scola and argued with him after telling him what happened. McCarthy left and drove around aimlessly.

¶ 13    The trial court found McCarthy not guilty of attempted murder and guilty of aggravated kidnapping while armed with a firearm and aggravated battery in which he knowingly discharged a firearm. The State nol-prossed all other counts. The trial court denied McCarthy's motion for a new trial.

¶ 14　At sentencing, McCarthy waived his right to be present. McCarthy's presentence investigative (PSI) report reflected eight convictions for unlawful firearm possession in 1977, retail theft in 1979, robbery in 1980, cannabis possession in 2008, possession of a controlled substance in 2013, speeding in 2014, aggravated fleeing from a police officer in 2014, and driving on a suspended license in 2017, as well as pending charges for aggravated unlawful use of a weapon. McCarthy reported he was raised in a stable home and maintained good relationships with his siblings, though he was estranged from his children. While imprisoned in the 1990s, he obtained his GED, an associate degree, and a certificate in construction. He owned and operated a property management company from 2006 until his arrest. McCarthy was receiving treatment for cancer and was 63 years old at the time of sentencing.

¶ 15　The State entered into evidence certified copies of McCarthy's convictions for aggravated fleeing in 2014, possession of a controlled substance in 2013, and murder in 1983. The State tendered a copy of the Illinois Supreme Court's decision affirming McCarthy's conviction for the 1983 murder. See *People v. McCarthy*, 132 Ill. 2d 331 (1989). In that case, McCarthy was found guilty of murdering his ex-girlfriend, with whom he shared two children, and was sentenced to 34 years in prison. *Id.* at 334.

¶ 16　In aggravation, the State pointed to the serious harm to Tabatha, McCarthy's use of a firearm, the related case pending before the same judge involving McCarthy's unlawful possession of a firearm, and his criminal history. It emphasized the similarities between the present case and the 1983 murder, where McCarthy also confronted and shot a former romantic partner. Tabatha read a victim impact statement in which she characterized her relationship with McCarthy as

emotionally, verbally, and physically abusive and described the trauma she and her son had experienced from the shooting.

¶ 17    In mitigation, defense counsel raised McCarthy's advanced age, cancer diagnosis, and financial support of family, as well as his degree and certificate earned while incarcerated and the business he started after release from custody. Counsel requested the minimum sentence of 21 years, arguing it was a *de facto* life sentence given McCarthy's age and poor health.

¶ 18    In announcing the sentence, the trial court recounted the facts, noting that McCarthy only failed to force Tabatha into his car because of her "quick thinking" and "fighting back." It criticized McCarthy for using his son as an excuse to attack Tabatha and characterized his blaming Tabatha for his son's estrangement as "dishonest" and "cowardice." The court noted it had read the PSI report and agreed that McCarthy led "a pretty normal life," including a normal childhood, and had "advanced himself" during and after his incarceration. As a result, it found McCarthy's crime "beyond shameful" and "beyond tragic." The court recited mitigating factors raised by McCarthy, including his age, health, education, and entrepreneurship, as well as the aggravating factors of serious harm to the victim and McCarthy's murder conviction, which the court noted was also "domestically involved." In addition, the court referenced the related "live case in front of me that I'm also considering in aggravation."

¶ 19    The trial court acknowledged defense counsel's concern of a "*de facto* life sentence" but found that "based on everything that I have heard and all of the arguments in mitigation," McCarthy's actions "do not merit a minimum sentence." It sentenced McCarthy to concurrent prison sentences of 30 years for aggravated kidnapping and 10 years for aggravated battery with a firearm. It denied McCarthy's motion to reconsider the sentence.

¶ 20                                          Analysis

¶ 21    McCarthy appeals, arguing his 30-year sentence for aggravated kidnapping is excessive where the trial court did not adequately weigh the mitigating factors. He makes no argument regarding his 10-year sentence for aggravated battery. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("[p]oints not argued [in appellant's brief] are forfeited").

¶ 22    The Illinois Constitution requires trial courts to impose sentences that reflect the offense's seriousness and defendants' rehabilitative potential. Ill. Const. 1970, art. I, § 11; see also *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46. To achieve this balance, a trial court must consider several factors in aggravation and mitigation, including a defendant's credibility, demeanor at trial, general moral character, mentality, social environment, habits, and age. *People v. Jones-Beard*, 2019 IL App (1st) 162005, ¶ 20 (citing *People v. Alexander*, 239 Ill. 2d 205, 213 (2010)). On appeal, we do not reweigh aggravating and mitigating factors and may not substitute our judgment for the trial court's because we could have weighed the factors differently. *Knox*, 2014 IL App (1st) 120349, ¶ 46.

¶ 23    The trial court has broad discretion when weighing the appropriate factors, and its decisions are entitled "great deference." *Alexander*, 239 Ill. 2d at 212. We will not reverse a trial court's sentencing decision absent an abuse of discretion. *Id.*

¶ 24    McCarthy's 30-year sentence for aggravated kidnapping falls within the permissible statutory range. Aggravated kidnapping while armed with a firearm is a Class X felony with a sentencing range of 21 to 45 years. 730 ILCS 5/5-4.5-25(a) (West 2018) (sentence of 6 to 30 years for Class X felony); 720 ILCS 5/10-2(a)(6), (b) (West 2018) (15 years added to sentence for aggravated kidnapping armed with a firearm). To prevail, McCarthy must affirmatively show that

the trial court did not consider the relevant factors in deciding his sentence. See *Jones-Beard*, 2019 IL App (1st) 162005, ¶ 22.

¶ 25    McCarthy argues the trial court abused its discretion because the sentence did not adequately consider "the evidence, his rehabilitative potential, older age, ailing health, or an appropriate balancing of rehabilitation and retribution." He points to his degree earned during incarceration, his business started after his release, and his financial support for Tabatha and their son despite their estrangement. He claims the trial court "possibly incorrectly viewed [mitigating factors] as aggravating" by framing them "as though it made his actions even less justified."

¶ 26    Further, he claims that his testimony—that his firearm "fired accidentally" –should be considered as mitigating evidence, even though it did not establish a defense. Finally, he argues that his age and poor health make the sentence "ineffectual *** in advancing the sentencing goals of incapacitation, deterrence, retribution, and rehabilitation," especially as incarceration may worsen his health.

¶ 27    The record shows that the trial court took into account all the factors McCarthy raises. The court explicitly stated it considered the seriousness of the offense and harm to the victim, as well as McCarthy's age, entrepreneurship, familial relationships, and potential for rehabilitation. It reviewed McCarthy's PSI report, which describes his medical conditions. See *People v. Kindle*, 2021 IL App (1st) 190484, ¶ 67 (We presume trial court considered all mitigating evidence absent affirmative indication to contrary, besides sentence itself). The court acknowledged McCarthy's concern that a minimum sentence would equate to a "*de facto* life sentence," yet it found his crime did not merit the minimum. The trial court had no obligation to impose the minimum sentence despite some evidence in mitigation. See *People v. Sims*, 403 Ill. App. 3d 9, 24 (2010).

¶ 28    Given this record, McCarthy is essentially seeking this court reweigh the sentencing factors and substitute our judgment for the trial court's judgment. This we cannot do. See *Knox*, 2014 IL App (1st) 120349, ¶ 46. The record demonstrates that the court properly afforded greater weight to the seriousness of the offense and McCarthy's criminal background. See *Jones-Beard*, 2019 IL App (1st) 162005, ¶ 22 (most important factor is seriousness of crime); see also *People v. Williams*, 2019 IL App (1st) 173131, ¶ 29 (criminal history alone may warrant sentence above minimum). Accordingly, the trial court did not abuse its discretion in sentencing McCarthy to 30 years in prison for aggravated kidnapping.

¶ 29    Affirmed.