2025 IL App (1st) 191086-B

No. 1-19-1086

Opinion filed March 14, 2025

Sixth Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 16CR10202-01 |
| DEMETRIUS GRAY, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Mary Margaret Brosnahan, |
| | ) | Judge, presiding. |

_____

JUSTICE C.A. WALKER delivered the judgment of the court, with opinion.
Justices Hyman and Gamrath concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a jury trial, defendant Demetrius Gray was found guilty of being an armed

habitual criminal (AHC) (720 ILCS 5/24-1.7(a) (West 2016)) and multiple gun offenses and was

sentenced to nine years in the Illinois Department of Corrections. On appeal, Gray argues that

(1) the AHC statute is unconstitutional on its face and as applied to him; (2) the circuit court erred

by refusing to accept his guilty plea; (3) he did not receive a fair trial because the jury improperly considered hearsay testimony and other crimes evidence; and (4) he was improperly sentenced. For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3    Gray was charged by indictment with multiple felonies, following an altercation on June 10, 2016. The charges included being an AHC, in violation of section 24-1.7(a) of the Criminal Code of 2012 (Code) (*id.*) for possessing a firearm after being convicted of unlawful use of a weapon by a felon and the manufacture and delivery of a controlled substance. Gray was also charged with various unlawful use of a weapon felonies and with misdemeanor aggravated assault with a firearm.

¶ 4    Gray appealed his convictions, and this court addressed his arguments regarding the sufficiency of the evidence in *People v. Gray*, 2021 IL App (1st) 191086, ¶¶ 16-18. We held that the evidence failed to prove that Gray had the necessary predicate convictions to support a later conviction for the AHC offense because Gray's prior conviction for the manufacture and delivery of a controlled substance was committed while he was a minor. The State appealed, and the Illinois Supreme Court reversed this court's judgment and reinstated Gray's conviction and sentence for the offense of AHC. *People v. Gray*, 2024 IL 127815, ¶ 1. Gray's remaining claims were remanded to this court for consideration. *Id.* ¶ 34.

¶ 5    Following the mandate from the Illinois Supreme Court, Gray filed a motion with this court entitled "Motion to Establish a Schedule for Supplemental Briefing on Remand from the Illinois Supreme Court." This court allowed Gray's motion on August 16, 2024, and Gray supplemented his original opening brief to include a new claim that the AHC statute is unconstitutional both on its face and as applied to him.

¶ 6    The following facts were elicited from Gray's trial in 2018. On June 10, 2016, a woman frantically flagged down a police car as it passed through her neighborhood near 73rd Street of South Paulina. Chicago police officers Fernando Moctezuma and Matthew Moore pulled their patrol car over. The woman guided Moctezuma's attention to a nearby parked car. Moctezuma noticed Gray sitting in the passenger seat, reaching for the glove compartment. As he approached the car, Moctezuma spotted a gun inside the compartment, and Gray was subsequently arrested.

¶ 7    Gray was taken to the 7th District police station for processing. Moore read Gray his *Miranda* rights. See *Miranda v. Arizona*, 384 U.S. 436 (1966). Gray stated he had found a handgun and planned to turn it in for cash. Later that evening, detective Kenneth Kamien was assigned to the case to investigate further.

¶ 8    At trial, Kamien testified that he read Gray his *Miranda* rights and interviewed him. Gray told Kamien he found the handgun two days earlier. Gray explained that on June 10, 2016, he left the handgun with his father before going to the beach with family members because he knew he could not take it with him. After returning from the beach, Gray headed to his father's apartment on the 7300 block of South Paulina Street to retrieve the handgun. After retrieving the handgun, he engaged in a physical and verbal altercation outside the apartment with an individual. Gray's shirt lifted and revealed a handgun in his waistband. Gray stated to Kamien that after the individuals were alerted to his possession of the handgun, he returned to the vehicle and placed the handgun inside the glove compartment, as he was an amateur boxer and did not need a gun because he could fight.

¶ 9    Prior to trial, on February 6, 2018, the State offered to recommend a sentence of eight years, with no more than 15% reduction for good behavior in exchange for a guilty plea which Gray rejected. He counteroffered to plead guilty in exchange for a sentence of six years with day-for-

day good time credit. The State rejected Gray's counteroffer. On May 9, 2018, the State offered to recommend the minimum sentence of six years, with no more than 15% reduction for good behavior in exchange for a guilty plea which Gray rejected. Gray stated he felt like everyone was against him and that he was "forced to take the time." He then cautiously accepted the State's offer to recommend a six-year sentence with no more than a 15% reduction for good behavior, in exchange for a guilty plea.

¶ 10    The circuit court agreed to accept the plea and requested a factual basis from the State. Gray raised concerns about certain details of the factual basis and asked the court whether he could have a different attorney. After Gray's request, the court rejected the plea offer, concluding that Gray might not be pleading guilty voluntarily. Before trial, Gray again requested to plead guilty in exchange for a six-year sentence to be served at 85%. The court denied the request. Prior to the beginning of trial, Gray again requested permission to plead guilty in exchange for a six-year sentence to be served at 85%. The court again rejected his request and stated its only interest was in making sure that Gray was pleading guilty knowingly and voluntarily. The court explained it did not believe Gray was pleading guilty voluntarily because he was "quibbling with the facts" and alluded to issues with his current counsel and requesting new counsel. This appeal followed.

¶ 11                                   II. JURISDICTION

¶ 12    Gray was sentenced on May 3, 2019. His notice of appeal was timely filed on May 3, 2019. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6), and Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013) and Rule 606 (eff. Dec. 7, 2023).

¶ 13                                    III. ANALYSIS

¶ 14    On appeal, Gray argues that (1) the AHC statute is unconstitutional on its face and as applied to him; (2) the circuit court erred by refusing to accept his guilty plea; (3) he did not receive a fair trial because the jury improperly considered hearsay testimony and other crimes evidence; and (4) he was improperly sentenced.

¶ 15                 A. AHC Unconstitutional on its Face and As Applied to Gray

¶ 16    Gray contends the AHC statute is unconstitutional on its face and as applied to him because it violates his individual right to bear arms under the United States and Illinois Constitutions, citing the ruling of the United States Supreme Court in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). The *Bruen* Court set forth a two-prong test for determining the constitutionality of firearm regulations: (1) whether the conduct in question falls within the scope of the second amendment and (2) if it does, the court should assess whether the government's regulation is consistent with the nation's historical tradition of firearm regulation. *Id.* at 18-19.

¶ 17    A person challenging the constitutionality of a statute faces the significant burden of overcoming the strong presumption that statutes are constitutional and must clearly prove that the constitution is violated. *People v. Rizzo*, 2016 IL 118599, ¶ 23. Courts are obligated to uphold the constitutionality of a statute whenever reasonably possible, resolving any uncertainties in favor of its validity. *Id.* A constitutional challenge to a statute can be either facial or as applied. *People v. Burns*, 2024 IL App (4th) 230428, ¶ 11. Whether a statute violates the constitutions of the United States or Illinois is a legal question, which we review *de novo*. *People v. Plank*, 2018 IL 122202, ¶ 10.

¶ 18    Specifically, Gray contends the AHC statute violates the second amendment (U.S. Const., amend. II) both facially and as applied to him. While facial and as-applied constitutional challenges

are not interchangeable, both are aimed at addressing institutional infirmities. *People v. Thompson*, 2015 IL 118151, ¶ 36. A facial challenge requires the party to demonstrate that the statute is unconstitutional in all circumstances, making the specific facts related to the party irrelevant. *Id.* A party may raise a facial challenge at any time. *Id.* ¶ 32. The burden on a challenger is especially heavy when asserting a facial constitutional challenge. *Rizzo*, 2016 IL 118599, ¶ 24. If there is any situation in which the statute could be constitutionally applied, the facial challenge must fail. *Id.*

¶ 19 Regarding the facial challenge, Gray claims his mere possession of a gun is protected by the plain text of the second amendment, and the State cannot prove that imposing a lifetime ban and criminal penalties on felonies is "consistent with the principles that underpin our regulatory tradition." *United States v. Rahimi*, 602 U.S. 680, 692 (2024). Gray further contends that he is part of "the people" in the second amendment, which historically includes convicted felons and is consistent with constitutional contexts codifying individual rights. Specifically, he argues that his mere possession of a gun as a nonviolent felon is protected by the second amendment.

¶ 20 We find, as have other panels of this court to consider this question, that Gray's facial challenge fails because we reject the argument that the second amendment extends protection to anyone other than "law-abiding citizens," meaning statutes that prohibit felons from possessing firearms, like AHC, generally fall outside of its scope. See *People v. Whitehead*, 2024 IL App (1st) 231008-U, ¶ 85. In so finding, we agree and are guided by the United States Supreme Court's repeated proposition—first in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and reiterated in *Rahimi*, 602 U.S. at 692—that laws prohibiting the possession of firearms by felons are presumptively lawful. See *Heller*, 554 U.S. at 626-27; *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the

mentally ill \*\*\*.' [Citation.] We repeat those assurances here."); see also *Rahimi*, 602 U.S. at 699 (following *Heller*, laws prohibiting felons possessing weapons were presumptively lawful).

¶ 21    Though we find the second amendment does not protect violent convicted felons, the notion that individuals convicted of nonviolent offenses, such as forgery or retail theft, pose a sufficient danger to justify a blanket prohibition on firearm possession raises significant concerns. We find *United States v. Duarte*, 101 F.4th 657 (9th Cir. 2024), guiding in this proposition. In *Duarte*, the court found that defendant's predicate offenses of vandalism, drug possession, and evading a peace officer were not serious enough to warrant the permanent deprivation of his fundamental second amendment right. *Id.* at 691. It is debatable whether such predicate offenses, by the standards of the Founding era, are serious enough to warrant an individual's permanent deprivation of their second amendment right. To be clear, we are not ruling on the issue as to nonviolent offenders because, in this case, Gray is not a nonviolent offender.

¶ 22    As we turn to Gray's as-applied challenge, we note that such a challenge requires demonstrating that a constitutional violation results from applying the statute to a specific set of facts and circumstances. *People v. Harris*, 2018 IL 121932, ¶ 38. An as-applied challenge is tied to the particular facts and circumstances of the individual raising the challenge. *Id.* ¶ 39. Typically, a defendant must present an as-applied constitutional challenge in the circuit court to develop the record regarding the specific facts and circumstances of his claim. *People v. Brooks*, 2023 IL App (1st) 200435, ¶ 57. But where all the relevant facts and circumstances are already part of the record, the claim may be raised for the first time on appeal. *Id.* Hence, we will review Gray's claim.

¶ 23    We find that Gray's as-applied challenge to AHC fails because, as this court explained in *People v. Baker*, 2023 IL App (1st) 220328, ¶ 37, *Bruen* does not apply to the possession of firearms by felons. The Court in *Bruen* specified that the test applied only to laws regulating the

gun possession of "law-abiding citizens." *Bruen*, 597 U.S. at 71. The clear and unambiguous language of the majority justices state that felons fall outside the scope defined by *Bruen*. See *id.* Gray is a twice convicted felon. And as another panel of this court explained, this conclusion stands, even where the defendant's prior felonies were nonviolent. See *Brooks*, 2023 IL App (1st) 200435, ¶ 100. Accordingly, we find Gray's constitutional challenge of the AHC fails as applied to him.

¶ 24 Gray also argues the AHC statute is unconstitutional under article I, section 22, of the Illinois Constitution, both on its face and as applied. He relies on his analysis under *Bruen* and argues that article I, section 22, of the Illinois Constitution provides protection to a broader set of people than the second amendment by expanding the group of persons subject to its protections because it uses the phrase "individual citizen" rather than "the people."

¶ 25 In *People v. Kelley*, 2024 IL App (1st) 230569, ¶ 24, this court addressed the same argument Gray raises and held it was "meritless." We noted:

> "In *Kalodimos v. Village of Morton Grove*, 103 Ill. 2d 483, 491 (1984), our supreme court recognized that '[section 22] does not mirror the second amendment to the Federal Constitution (U.S. Const., amend. II); rather it adds the words "[s]ubject only to the police power," omits prefatory language concerning the importance of a militia, and substitutes "the individual citizen" for "the people." ' The Bill of Rights Committee's majority report (Committee Report) clarifies that 'the latter two changes were intended to broaden the scope of the right to arms from a collective one applicable only to weapons traditionally used by a regulated militia *** to an individual right covering a wider variety of arms.' *Id.* (citing 6 Record of Proceedings, Sixth Illinois Constitutional Convention 87 (report of Bill of Rights Committee) (hereinafter Proceedings)). Nothing in the Committee Report,

however, suggests that these changes were intended to protect a convicted felon's right to bear arms. To the contrary, ' "[b]ecause arms pose an extraordinary threat to the safety and good order of society, the possession and use of arms is subject to an extraordinary degree of control under the police power." ' *Id.* at 491-92 (quoting Proceedings 88). The extraordinary degree of control has long included 'prohibitions on the possession of firearms by felons.' (Internal quotation marks omitted.) See, *e.g.*, *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010); *Heller*, 554 U.S. at 626-27." *Kelley*, 2024 IL App (1st) 230569, ¶ 25.

Accordingly, we also reject Gray's argument.

¶ 26    Based on the *Bruen* test and the current state of the law, we find the AHC statute is not unconstitutional as applied to Gray. But to say that anyone convicted of nonviolent offenses—such as forgery or felony retail theft—is too menacing to possess a firearm is troublesome. We acknowledge the dissent of Justice McDade in *People v. Montgomery*, 2024 IL App (3d) 220326-U and find the concerns raised regarding nonviolent felony offenses worthy of further examination.

"As written, Illinois law prohibits gun possession by felons, regardless of the predicate offense. However, there are many felony offenses that are nonviolent, including unlawful or syndicated gambling (720 ILCS 5/28-1(c), 28-1.1(f) (West 2022)), bribery (*id.* §§ 29-2, 29A-3(b)), money laundering (*id.* § 29B-1(c)), perjury (*id.* § 32-2(e)), bid-rigging (*id.* § 33E-3), receiving or offering kickbacks (*id.* § 33E-7(c)), flag desecration (*id.* § 49-1(e)), and eavesdropping (*id.* § 14-4), among many others. To say that anyone convicted of any of these nonviolent offenses is too dangerous to possess a firearm is unreasonable." *Id.* ¶ 54 (McDade, P.J., dissenting).

¶ 27                    B. Court's Refusal to Accept Guilty Plea

¶ 28    Gray contends the circuit court erred by refusing to accept his guilty plea. The decision to accept a guilty plea is within the discretion of the circuit court. *People v. Peterson*, 311 Ill. App. 3d 38, 43 (1999). Illinois Supreme Court Rule 402(d)(2) (eff. July 1, 2012) also provides that the circuit court has the discretion to accept a tentative plea agreement. In determining whether to accept or reject a plea agreement, a court must use "sound judicial discretion." *People v. Thomas*, 246 Ill. App. 3d 708, 715 (1993). This court will not substitute its judgment for that of the circuit court, absent a finding of an abuse of discretion, which occurs only when no reasonable person would agree with the decision of the circuit court. *People v. Peterson*, 311 Ill. App. 3d 38, 45 (1999). A decision is an abuse of discretion when it lacks a foundation in facts, logic, or reason and is arbitrary, unreasonable, or unconscionable. *Id.*

¶ 29    We find the record supports the contention that the circuit court did not abuse its discretion in rejecting the plea agreement because Gray repeatedly complained about his trial counsel's advocacy and was hesitant to plead guilty while accepting the State's offer. Prior to trial, the State's offer mandated that he would serve 85% of his sentence. Gray tried to renegotiate with the circuit court by asking the court to show mercy and only sentence him to 50%. The court refused to accept Gray's guilty plea because Gray stated he was "forced to take the time" and his trial counsel believed he would lose at trial. Gray asked the court for new counsel and stated that he and his attorney "really didn't agree on nothing about this." After the request was denied, Gray stated he "wanted to hurry up and get this over with."

¶ 30    Gray expressed hesitancy after the State proffered a factual basis to support his plea, and he contested an irrelevant fact alleged during the proffer and the State retracted the statement. Even after the retraction of the statement, Gray demanded for the proffer to be repeated. The court then determined that Gray did not want to plead guilty and found that Gray's plea was not voluntary.

We find the record shows the circuit court did not abuse its discretion in refusing to accept Gray's guilty plea because Gray showed signs that he may have felt compelled to plead guilty. See *Thomas*, 246 Ill. App. 3d at 715-16.

¶ 31        C. Jury's Improper Consideration of Hearsay and Other Crimes Evidence

¶ 32    Gray contends that he did not receive a fair trial and reversal is warranted. He claims the alleged error by the circuit court allowed the jury to improperly consider inadmissible hearsay testimony and other crimes evidence. He further asserts this was plain error, and trial counsel was ineffective for failing to object to the alleged improper evidence. Gray argues it was error for Moctezuma and Moore to testify that the individual who flagged them down stated that he had a gun in the vehicle. He also argues it was error for Kamien to testify that he was in custody for a weapons violation and aggravated assault. Gray failed to object timely to improper evidence or to request limiting instructions for the jury and failed to preserve these issues in his posttrial motions but contends we can reach the alleged error on plain error review. He further asserts his trial counsel was ineffective for failing to object to the alleged improper evidence.

¶ 33    Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967) allows for review of errors that have not previously been waived but affect substantial rights. The plain-error rule represents a limited and narrow exception to the forfeiture rule. *People v. Williams*, 2022 IL App (2d) 200455, ¶ 104. A reviewing court may consider a forfeited issue under the plain-error rule when (1) the evidence is so closely balanced that the jury's guilty verdict may have resulted from a clear or obvious error and not the evidence; or (2) when a clear or obvious error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process. *Id.* The closely balanced evidence prong protects against wrongful convictions by preventing errors that could lead to the conviction of an innocent person, while the substantial rights prong guards against errors that erode

the judicial process and undermine the fairness of the defendant's trial. *People v. Herron*, 215 Ill. 2d 167, 186 (2005). The burden of persuasion lies with the defendant. *Id.* at 187. Where a defendant fails to show prejudice, a defendant's allegations of ineffective assistance of counsel and plain error under the closely balanced evidence prong both fail. *People v. Hensley*, 2014 IL App (1st) 120802, ¶ 47.

¶ 34    Gray contends that trial counsel was ineffective for failing to object to improper evidence or to request limiting instructions for the jury and failing to preserve these issues in his posttrial motions. To prevail on a claim of ineffective assistance of counsel, Gray must show that counsel's performance fell below an objective standard of reasonableness and there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *People v. Albanese*, 104 Ill. 2d 504, 525 (1984). We review the legal question of whether counsel provided ineffective assistance *de novo*.

¶ 35    Gray argues that the testimony from Moctezuma and Moore that an individual who flagged them down and stated Gray had a handgun was inadmissible hearsay. Hearsay is an out-of-court statement offered for the truth of the matter asserted. *People v. Frazier*, 2016 IL App (1st) 140911, ¶ 21. Testimony regarding out-of-court statements not offered for the truth of the matter asserted, but rather to explain why the officers took certain actions, is not hearsay. *People v. Simms*, 143 Ill. 2d 154, 173-74 (1991). At trial, Moctezuma and Moore explained why they approached Gray in the car. Moctezuma testified that there was a woman that "looked frantic. She was waving her hand trying to get our attention. [As we got closer] she stated, "that guy's got a gun, he's got a gun, he's got a gun." The individual was pointing towards the Pontiac that Gray was in. When Moctezuma approached the vehicle, he observed Gray reaching into the glove compartment, where Moctezuma later found the handgun.

¶ 36 We find no clear or obvious error with the testimony of Moctezuma and Moore because their statements explained why they approached Gray in the car; thus, Gray fails to establish plain error. *People v. Clark*, 160 Ill. App. 3d 877, 885 (1987). In *Clark*, this court found that a co-offender's statement that defendant had a gun was not hearsay because it explained why officers decided to follow and apprehend the defendant. *Id.* Similar to *Clark*, Moctezuma and Moore's statements offered an explanation to why they approached Gray in his vehicle. See *id.*

¶ 37 Similarly, we find Gray's trial counsel was not ineffective for failing to object to this testimony because the record supports the contention that counsel's failure to object to this evidence or to request limiting instructions for the jury does not fall below the objectively reasonable standard. The circuit court noted the State's arguments that the individual who told Moctezuma and Moore that Gray had a gun were admitted to explain the officers' course of conduct during the investigation. See *People v. Gardner*, 2024 IL App (4th) 230443, ¶39 (where the court found counsel cannot be ineffective for failing to make a futile motion to strike properly admitted testimony). The alleged improper evidence was not admitted for the truth of the matter asserted, but only to explain why Moctezuma and Moore acted the way they did. Also, the jury was instructed on how to evaluate statements made by a defendant and it was their responsibility to determine whether Gray made the statement and how much weight to assign it considering the totality of the circumstances.

¶ 38 Gray next contends it was error for Kamien to testify that he was in custody for a weapons violation and aggravated assault. Kamien testified that he was assigned to an investigation involving Gray where he learned "there was one person in custody for a weapons violation and aggravated assault." The State contends this testimony was admissible evidence of the continuing narrative of events that led to the crimes in the case *sub judice*.

¶ 39   Evidence of other crimes is admissible if it forms part of the ongoing sequence of events leading to the offense, is closely connected to the charged event, or clarifies an element of the charged crime that would otherwise be implausible. *People v. Thompson*, 2013 IL App (1st) 113105, ¶ 101. The State references several cases in which evidence of other crimes was essential to clarify the charged offense.

¶ 40   We find it was clear error to admit Kamien's testimony. The fact that Gray had been arrested for aggravated assault did not form a part of the ongoing sequence of events leading to his AHC charge, meaning Kamien's testimony was not closely connected to the charge, nor did it clarify an element of the charge because the mention of Gray's arrest for aggravated battery was irrelevant in connection with his AHC charge. See *Id.* ¶ 101.

¶ 41   We do not find that Gray is entitled to relief because of this error, however, because the evidence was not closely balanced. The evidence against Gray was so overwhelming that we do not believe he would reasonably demonstrate the result would have been different had Kamien's testimony not been elicited. See *id.* ¶ 70. Gray admitted he found the gun days earlier and intended to turn it in for cash. The jury was instructed on how to assess statements made by a defendant. It was their responsibility to decide whether Gray made the statement and to determine its significance based on the overall context. Accordingly, we reject Gray's argument that he did not receive a fair trial because the jury improperly considered inadmissible hearsay testimony and other crimes evidence. Finally, because the evidence against Gray was so overwhelming, we further find that his trial counsel could not be ineffective for failing to object to the admission of Kamien's testimony because Gray cannot demonstrate he was prejudiced by this failure.

¶ 42                                 D. Excessive Sentence

¶ 43    Gray contends that his sentence was improper because the court relied on a factor implicit in his offense. He also argues that his sentence was excessive, given the State recommended the minimum six year imprisonment and he presented significant mitigating factors.

¶ 44    A sentence within the statutory range is reviewed for an abuse of discretion and can only be modified if it significantly deviates from the intent and purpose of the law or is clearly disproportionate to the nature of the offense. *People v. Jones*, 2019 IL App (1st) 170478, ¶ 50. A court must weigh both aggravating and mitigating factors. See 730 ILCS 5/5-5-3.1, 5-5-3.2 (West 2016). A reviewing court will not substitute its judgment for that of the circuit court because it would have weighed the sentencing factors differently. *Jones*, 2019 IL App (1st) 170478, ¶ 50. The burden lies with the defendant to prove the court improperly considered a sentencing factor. *People v. Dowding*, 388 Ill. App. 3d 936, 943 (2009).

¶ 45    Here, the record shows that the circuit court considered both aggravating and mitigating factors and noted it reviewed the presentence investigation report in depth. The record does not support the contention that the circuit court relied on factors inherent in the offense in aggravation. "A trial court is not required to refrain from any mention of sentencing factors that constitute elements of the offense." *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 15. The circuit court referenced the offense in the context of mitigating factors related to Gray's criminal conduct, specifically considering whether it caused or threatened serious harm to another. The court also acknowledged its awareness of the legal principle that generally prohibits using the same factor both as an element of the offense and as an aggravating factor.

¶ 46    The circuit court heard arguments in aggravation and mitigation, reviewed a 26-page mitigation report, and considered mitigation letters sent from family and friends on Gray's behalf. Gray was charged with AHC, a Class X felony with a sentencing range between 6 and 30 years in

prison. Gray's sentence of 9 years is 21 years below the maximum and only 3 years above the minimum. Unless there is an abuse of discretion, we will not substitute our judgment for that of the circuit court, even if we may have weighed the sentencing factors differently. *Jones*, 2019 IL App (1st) 170478, ¶ 50. There is no indication of an abuse of discretion here. The court is not required to assign a value to factors in mitigation or aggravation that form part of the record. *Id.* Accordingly, we reject Gray's argument that his sentence was improper because the circuit court relied on a factor implicit in his offense and that his sentence was excessive.

¶ 47                                    IV. CONCLUSION

¶ 48    The circuit court did not err in refusing to accept Gray's guilty plea because Gray showed signs that he felt compelled to accept the plea. The substantial and compelling evidence of Gray's guilt did not compromise the fairness of his trial; the court did not abuse its discretion in sentencing; and the AHC statute is not unconstitutional under the second amendment and article I, section 22, of the Illinois Constitution.

¶ 49    Affirmed.

***People v. Gray*, 2025 IL App (1st) 191086-B**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 16-CR-10202-01; the Hon. Mary Margaret Brosnahan, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Anna C. Carlozzi, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Jessica R. Ball, and John E. Nowak, Assistant State's Attorneys, of counsel), for the People. |