2025 IL App (1st) 231020-U
No. 1-23-1020

FIRST DIVISION
June 2, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 21 CR 3969 |
| | ) | |
| TYRONE ROBINSON, | ) | The Honorable |
| | ) | Patrick Coughlin, |
| Defendant-Appellant | ) | Judge Presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Lavin and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held:* (1) The armed habitual criminal statute is facially constitutional under both the Second Amendment and Article I, Section 22 of the Illinois Constitution. (2) Defendant's nine-year sentence did not constitute a trial tax.

¶ 2    Defendant Tyrone Robinson appeals his conviction and sentence for armed habitual criminal. On appeal, defendant argues that the armed habitual criminal statute (720 ILCS 5/24-1.7(a) (West 2020)) violates the Second Amendment (U.S. Const., amend. II) and Article I, Section 22 of the Illinois Constitution (Ill. Const. art. I, § 22) on its face. He also claims that the circuit court penalized him for exercising his right to trial by sentencing him to a nine-year sentence when

the court previously offered an eight-year sentence based on the same set of circumstances. We affirm.

¶ 3                                                    BACKGROUND

¶ 4        A grand jury indicted defendant with one count of armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2020)), two counts of unlawful possession of a weapon by a felon (*id*. § 24-1.1(a), and two counts of aggravated unlawful use of a weapon (*id*. § 24-1.6(a)(1), (a)(3)(A-5); (a)(1), (a)(3)(C)).

¶ 5                                             Pre-Trial Proceedings

¶ 6        On May 5, 2022, during a hearing on a motion to reduce defendant's bond, defense counsel noted that defendant was on parole in connection with a prior case at the time of his arrest. The State informed the court that defendant had eight prior felony convictions; however, it explicitly listed only seven: aggravated robbery, retail theft (twice), burglary (twice), possession of a controlled substance, and armed robbery. The State then provided its proffer. The court denied the motion based on defendant's criminal history and high pretrial assessment scores for both failure to appear and likelihood of new criminal activity.

¶ 7        On September 1, 2022, the court held a 402 conference with the parties. Following the conference, the court offered defendant a plea deal of eight years' imprisonment on count one, armed habitual criminal. The State had previously made the same offer to defendant prior to the conference. The case proceeded to a jury trial.

¶ 8                                          Trial Evidence and Verdict

¶ 9        Officer Anthony Kudra testified that on February 24, 2021, at approximately 1:30 p.m., he and his partner, Officer Baranouski, observed a silver Chevy Impala disobey a stop sign. They performed a traffic stop. Kudra asked the driver to roll down his window. The driver opened the

car door since the window did not work. Kudra observed a clear bag containing a green leafy substance inside the driver's side doorjamb. He suspected it was cannabis. He asked the driver and defendant to exit the vehicle so he could search it. Defendant exited the front passenger side of the vehicle and began arguing with the officers. Officer Nordstrom arrived to assist the officers. Kudra observed a bag protruding from defendant's jacket pocket, so he instructed Nordstrom to search him. Before Nordstrom could search defendant, defendant attempted to flee the scene only to slip on some ice after a few steps. The officers attempted to gain control of defendant and Baranouski yelled "gun." The officers recovered a firearm and arrested defendant. The court admitted Kudra's body camera footage into evidence and published it to the jury. Kudra identified the firearm in the footage.

¶ 10    The court admitted Baranouski's body camera footage of the traffic stop he and Kudra conducted on February 24, 2021, at approximately 1:30 p.m., and published it to the jury. Baranouski identified defendant in the footage as the passenger in the vehicle. During the footage, Baranouski yelled, "Gun, gun," because he observed a firearm in defendant's waistband. Nordstrom recovered the firearm from defendant's waistband.

¶ 11    The parties stipulated that Illinois State Police Forensic Scientist Nicole Fundell would have testified that the firearm recovered was a Taurus Model G2C .9mm Luger semi-automatic pistol. The firearm was operable and capable of firing.

¶ 12    Detective Perez testified that on February 24, 2021, he interviewed defendant. He first advised defendant of his *Miranda* rights and defendant signed a *Miranda* form. Perez asked defendant, "[W]hat happened today," and defendant responded, "Something along the lines of everything that was found on me belongs to me***."

¶ 13　　　　The parties stipulated that on February 9, 1999, February 2, 2017, and February 24, 2021, the defendant had been convicted of prior qualifying felony offenses.

¶ 14　　　　The State rested. Defense counsel moved for a directed verdict which the court denied. The jury found defendant guilty of armed habitual criminal.

¶ 15　　　　　　　　　　　　　　　　　Sentencing

¶ 16　　　　At the sentencing hearing, the court noted that it had an opportunity to review the pre-sentence investigation report ("PSI"). The PSI detailed defendant's criminal history: a 1990 conviction for possession of a controlled substance and delivering a controlled substance, a 1990 conviction for delivering a controlled substance, a 1997 conviction for unlawful use of a weapon and criminal damage to property, a 1999 conviction for armed robbery, a 2006 conviction for retail theft, a 2007 conviction for retail theft, a 2009 conviction for possession of a controlled substance, a 2009 conviction for resisting a peace officer, a 2011 conviction for burglary, a 2014 conviction for theft, two 2015 convictions for theft, a 2017 conviction for aggravated robbery and theft, and a 2021 conviction for aggravated criminal damage to government property.

¶ 17　　　　In aggravation, the State argued that defendant had been convicted of thirteen felonies, including several forcible felonies. Defendant also received a new criminal charge of criminal damage to government property while being detained for this case. Defendant impeded justice in this case by attempting to flee a traffic stop and prevent the officers from searching the vehicle. The State concluded that defendant was a risk to the public at large and requested an appropriate sentence. The court then noted that it would not consider defendant's armed robbery and aggravated robbery convictions in aggravation, as those offenses were already used to elevate the armed habitual criminal offense to a Class X felony.

¶ 18　　　　In mitigation, defense counsel argued that of the remaining felonies the court could consider, none were violent. Defense counsel noted that, similar to the 402 conference, defendant was requesting six years' imprisonment. Defense counsel stated, "However, we understood at the time the Court was willing to offer [defendant] eight years on the armed habitual criminal. We don't believe the Court has learned anything through the trial or the [PSI] that would lead to an increased sentence beyond that eight years." Defense counsel highlighted defendant's significant familial support, his character and willingness to accept responsibility, and lack of any evidence that defendant intended to use the firearm for anything other than protection in a dangerous neighborhood. Defense counsel then stated, "So Judge, we are as we said in the 402 still seeking the six years; but we'll reiterate that we don't believe there's anything additional that the Court learned that would lead the Court to a sentence of more than eight years."

¶ 19　　　　In addressing the court, defendant thanked the court for allowing him to exercise his rights. He accepted responsibility for possessing the firearm and admitted that he knew he was not allowed to possess a firearm. He stated he recently lost a nephew and that the area he lived in was not particularly safe for him at the time. He mentioned that a lot of the issues he faced in life stemmed from his addiction, but that he had been clean since 2015. He noted that he continued to educate himself on becoming a better person by taking part in programs and earning certificates. He informed the court that he had an opportunity to leave Illinois upon his release and in the future his safety would not be at issue.

¶ 20　　　　The court informed defendant that it did not take issue with him exercising his right to a jury trial. The court appreciated defendant taking responsibility for his actions. The court then noted defendant's extensive criminal history and again explicitly stated that it was not considering the two qualifying offenses. The court recognized that defendant had a good upbringing, received

his GED, obtained trade certificates, enrolled in CDL classes, maintained employment in 2020, ceased gang involvement in 2001, had a strong support network, and did not use alcohol. The court indicated that it was a little troubled by his admission that he was the first one in a fight and was previously written up five times in jail. Still, the court emphasized that it was mainly concerned with his prior convictions. The court then sentenced defendant to nine years' imprisonment.

¶ 21   Defense counsel filed a motion to reconsider sentence arguing that the sentence improperly penalized defendant for exercising his right to a trial. The court denied the motion. Defendant appealed.

¶ 22                                   ANALYSIS

¶ 23   On appeal, defendant argues that the armed habitual criminal statute (720 ILCS 5/24-1.7(a) (West 2020)) violates the Second Amendment (U.S. Const., amend. II) and Article I, Section 22 of the Illinois Constitution (Ill. Const. art. I, § 22) on its face. He also claims that the circuit court penalized him for exercising his right to trial by sentencing him to a nine-year sentence when the court previously offered an eight-year sentence based on the same set of circumstances.

¶ 24               Constitutionality of Armed Habitual Criminal Statute

¶ 25   Defendant first argues that the armed habitual criminal statute is facially unconstitutional under the Second Amendment and Article I, Section 22 of the Illinois Constitution because there is no founding-era evidence supporting the permanent, status-based revocation of the right to keep and bear arms.

¶ 26   "Statutes are presumed to be constitutional." *People v. Legoo*, 2020 IL 124965, ¶ 29. A party challenging the constitutionality of a statute bears the burden of clearly establishing its invalidity. *Id*. "This court has a duty to construe a statute in a manner that upholds its validity and constitutionality if it reasonably can be done." *People v. Graves*, 207 Ill. 2d 478, 482 (2003). A

facial challenge requires showing that a statute is unconstitutional in all applications, as it fails if any valid application exists. *People v. Rizzo*, 2016 IL 118599, ¶ 24. We review a challenge to the constitutionality of a statute *de novo*. *Id*. ¶ 23.

¶ 27    *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), set forth a two-prong test for determining the constitutionality of firearm regulations: (1) whether the conduct in questions falls within the scope of the Second Amendment and (2) if it does, the court should assess whether the government's regulation is consistent with the nation's historical tradition of firearm regulation. *Id*. at 18-19.

¶ 28    In *People v. Gray*, 2025 IL App (1st) 191086-B, the defendant claimed the armed habitual criminal statute was unconstitutional on its face because it violated his Second Amendment right and Article I, Section 22 of the Illinois Constitution. *Id*. ¶ 16. The *Gray* court rejected the defendant's facial challenge, holding that the Second Amendment protects only "law-abiding citizens," and thus does not extend to statutes prohibiting felons from possessing firearms. *Id*. ¶ 20. The *Gray* court noted that the United States Supreme Court has consistently held in *District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008), and *United States v. Rahimi*, 602 U.S. 680, 699 (2024), that laws prohibiting the possession of firearms by felons are presumptively lawful. *Gray*, 2025 IL App (1st) 191086-B, ¶ 20.

¶ 29    Regarding the defendant's argument that the armed habitual criminal statute was unconstitutional under Article I, Section 22, of the Illinois Constitution, the *Gray* court noted that this court had already deemed the argument "meritless" in *People v. Kelley*, 2024 IL App (1st) 230596. *Gray*, 2025 IL App (1st) 191086-B, ¶ 25.

> "In *Kalodimos v. Village of Morton Grove*, 103 Ill. 2d 483, 491, 83 Ill. Dec. 308, 470 N.E.2d 266 (1984), our supreme court recognized that "[section 22] does not mirror the second amendment to the Federal Constitution (U.S. Const., amend. II); rather it adds the words '[s]ubject only to the police power,' omits

prefatory language concerning the importance of a militia, and substitutes 'the individual citizen' for 'the people.' " The Bill of Rights Committee's majority report (Committee Report) clarifies that "the latter two changes were intended to broaden the scope of the right to arms from a collective one applicable only to weapons traditionally used by a regulated militia *** to an individual right covering a wider variety of arms." *Id.* (citing 6 Record of Proceedings, Sixth Illinois Constitutional Convention 87 (report of Bill of Rights Committee) (hereinafter Proceedings)). Nothing in the Committee Report, however, suggests that these changes were intended to protect a convicted felon's right to bear arms. To the contrary, " '[b]ecause arms pose an extraordinary threat to the safety and good order of society, the possession and use of arms is subject to an extraordinary degree of control under the police power.' " *Id.* at 491-92, 83 Ill.Dec. 308, 470 N.E.2d 266 (quoting Proceedings 88). The extraordinary degree of control has long included "prohibitions on the possession of firearms by felons." (Internal quotation marks omitted.) See, *e.g.*, *McDonald v. City of Chicago*, 561 U.S. 742, 786, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010); *Heller*, 554 U.S. at 626-27, 128 S.Ct. 2783." *Kelley*, 2024 IL App (1st) 230569, ¶ 25.

Accordingly, the *Gray* court rejected defendant's argument. *Gray*, 2025 IL App (1st) 191086-B, ¶ 25. Based on *Gray*, we likewise reject defendant's facial challenges to the armed habitual criminal statute under both the Second Amendment and article I, section 22, of the Illinois Constitution.

¶ 30                                                   Trial Tax

¶ 31        Defendant argues that the circuit court penalized him for exercising his right to trial by sentencing him to a nine-year sentence when the court previously offered an eight-year sentence based on the same set of circumstances. The State argues that the circuit court did not abuse its discretion by sentencing him well within the statutory range. We review the circuit court's sentencing decision for an abuse of discretion. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010).

¶ 32        A circuit court may not impose a harsher sentence as a penalty for a defendant's decision to exercise the right to stand trial. *People v. Jones-Beard*, 2019 IL App (1st) 162005, ¶ 26. However, the mere fact that a defendant received a greater sentence than what was offered during plea negotiations does not by itself support an inference that the sentence was imposed as punishment for exercising the right to stand trial. *Jones-Beard*, 2019 IL App (1st) 162005, ¶ 26

(quoting *People v. Carroll*, 260 Ill. App. 3d 319, 348-49 (1st Dist. 1992)). "Indeed, it must be 'clearly evident' in the record that the harsher sentence resulted from the trial demand." *Jones-Beard*, 2019 IL App (1st) 162005, ¶ 26 (quoting *People v. Ward*, 113 Ill. 2d 516, 526 (1986)). Such evidence may arise from explicit remarks by the trial court linking the harsher sentence to the trial demand or where the imposed sentence is outrageously higher than the plea offer. *Jones-Beard*, 2019 IL App (1st) 162005, ¶ 26. In making this determination, we examine the record as a whole rather than isolating a few words or statements made by the trial court. *Id*.

¶ 33        Here, defendant has not presented any evidence, other than the sentence itself, indicating that his sentence was the result of a trial tax. Additionally, the disparity between the sentence offered by the court at the 402 conference and the sentence ultimately imposed was only one year, representing a 12.5% increase. Rather, defendant must demonstrate that the circuit court imposed a sentence so outrageously higher than the one offered pretrial that the only conclusion can be that the court punished him for exercising his right to trial. See *People v. Dennis*, 28 Ill. App. 3d 74, 78 (1975) ("We can only conclude that the sentence [20 times greater than the pretrial offer] was imposed as punishment for [defendant's] decision to reject the State's offer and chose instead a jury trial."); see also *People v. Garcia*, 2023 IL App (1st) 172005, ¶ 77 (The sentence imposed was 64 years greater than the circuit court's pretrial recommendation, representing a 177% increase and far exceeding the typical 15–60% plea-to-trial sentencing disparity, which could only be explained as a trial tax). Furthermore, the circuit court had more information after the trial and upon reviewing the PSI than it did at the time of the 402 conference. The court did not abuse its discretion in considering that information at sentencing and determining that a nine-year sentence was more appropriate than the previously proposed eight-year sentence. Finally, the court

explicitly stated during the sentencing hearing that it did not take issue with defendant's decision to exercise his right to a jury trial.

¶ 34    Viewing the record as a whole, we find nothing that makes it clearly evident the circuit court intended to punish defendant for exercising his right to trial. Accordingly, we conclude that the court did not abuse its discretion and affirm defendant's sentence.

¶ 35                                            CONCLUSION

¶ 36    For the reasons stated above, we affirm defendant's conviction and sentence.

¶ 37    Affirmed.