NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (4th) 241235-U

NO. 4-24-1235

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 1, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| ROBERT ADAM HIGHTOWER, | ) | No. 21CF163 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Paul P. Gilfillan, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE HARRIS delivered the judgment of the court.
Justices Vancil and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:  (1) The State's evidence was sufficient to prove defendant guilty beyond a reasonable doubt of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2020)).

(2) Defendant failed to establish that the unlawful possession of a weapon by a felon statute (720 ILCS 5/24-1.1(a) (West 2020)) is unconstitutional under the second amendment to the United States Constitution (U.S. Const., amend. II) either on its face or as applied to defendant.

¶ 2    Following a jury trial, defendant, Robert Adam Hightower, was convicted of unlawful possession of a weapon by a felon (UPWF) (720 ILCS 5/24-1.1(a) (West 2020)) and sentenced to two years in prison. He appeals, challenging the sufficiency of the evidence against him and arguing that the charging statute is both unconstitutional on its face and as applied to him. We affirm.

¶ 3                              I. BACKGROUND

¶ 4        In March 2021, defendant was charged by indictment with UPWF (*id.*). The charge was based on allegations that defendant possessed a handgun after previously being convicted of a felony offense.

¶ 5        In July 2024, the trial court conducted defendant's jury trial. Joseph Harris testified for the State that in March 2021, he was a patrol officer for the Peoria Police Department. At approximately 3:30 a.m. on March 17, 2021, he was "dispatched to Big Al's" in response to a call about "[t]rouble with three males." As Harris arrived at the scene and turned into Big Al's main parking lot, he noticed a man "next to a large lifted pickup truck place an item under the rear tire." He described the man as wearing light-colored Timberland boots, dark-colored pants, and a green jacket. Harris stated he could see under the truck, which had "a lift kit on it," when he saw the man place an object down. Harris maintained he saw no one else "standing around at the back of the pickup truck."

¶ 6        Harris then approached the man, whom he identified as defendant. For safety purposes, Harris "right away" used his flashlight to illuminate the area of the tire "to know what was placed down there." He immediately determined that the object was a firearm.

¶ 7        During Harris's testimony, the State presented photographs of the firearm on the ground next to the truck's driver's side rear tire. It also presented a recording of the incident from Harris's body-worn camera, which was played for the jury. The recording showed Harris exiting his squad car and approaching defendant, who was then standing near the open driver's side door of the truck and dressed as described by Harris. Defendant was holding a red article of clothing that he placed inside the truck. As Harris began speaking to defendant, a light was used to illuminate the area of the driver's side rear tire, showing the handgun on the ground. Harris and another officer then began placing defendant in handcuffs while Harris told the other officer that

he "just saw [defendant] put that gun under the tire." Defendant responded by stating, "You just saw me do what?" When the other officer repeated that there was a gun under the vehicle, defendant asserted that he "picked up a T-shirt." Harris disagreed, telling defendant, "You just put that gun under there."

¶ 8        On cross-examination, Harris initially stated he did not recall defendant holding any items other than what he saw defendant place next to the tire. When asked whether the recording from his body-worn camera showed defendant holding a red shirt or object in his hands, Harris stated he had not been "paying attention to that." He then stated he did not recall whether defendant had been holding something at the time of their encounter. Harris further agreed that there was a passenger in the front seat of the truck who exited the vehicle wearing a red hoodie. Additionally, Harris stated he did not ask defendant any questions about a shirt and that he responded to defendant's assertion that he had picked up a T-shirt only by disagreeing with him.

¶ 9        The State further presented testimony from Peoria police officer Megan Rosenak. Rosenak testified that during the early morning hours of March 17, 2021, she also responded to a call about an incident at Big Al's, arriving at the scene just after Harris. She denied seeing anyone other than defendant standing in the parking lot. Rosenak observed defendant "on the other side of" a parked truck and "walking towards the front of the vehicle." Although she did not see him "place anything," Harris informed her when she "got up there" that defendant needed to be detained because Harris saw defendant "place a gun by the tire." Harris also showed Rosenak the gun using his flashlight.

¶ 10        The parties stipulated regarding the testimony of State witness Clay Blum, a police officer for the City of Peoria. They agreed that if called as a witness, Blum would testify that (1) he was trained in the methods of detecting and comparing fingerprints, (2) he examined the firearm

at issue in the case and found no latent fingerprints, and (3) "in his experience it is common that fingerprints are not detected on firearms." The parties also stipulated that in 2004, defendant had been convicted of a felony offense.

¶ 11　　　　During his case-in-chief, defendant offered no evidence or witness testimony. Ultimately, the jury returned a verdict finding defendant guilty of the charged offense.

¶ 12　　　　In September 2024, defendant filed a motion for a new trial, arguing, in part, that the State failed to prove his guilt beyond a reasonable doubt. The same month, the trial court denied the motion and proceeded with sentencing. Defendant's presentence investigation report showed his criminal history included a juvenile adjudication for the manufacture/delivery of cannabis, a 2002 ordinance violation for selling cigarettes to a minor, a 2002 misdemeanor conviction for attempting to obstruct justice/destroy evidence, a 2002 misdemeanor conviction for theft, and a 2004 felony conviction for obstructing justice/destroying evidence. Defendant also had numerous traffic-related violations.

¶ 13　　　　In presenting arguments to the trial court, the State referenced defendant's criminal history and asked the court to impose a term of imprisonment "in an amount the Court [found] appropriate." Defendant's counsel represented that defendant's prior felony conviction "had to do with a false information to an officer" that occurred 20 years prior and urged the court to impose the minimum two-year prison sentence. In providing a statement in allocution, defendant described the circumstances surrounding his prior felony conviction, stating as follows: "My felony conviction from 20 years ago was a traffic case. Started as a traffic case. Actually, I was driving and my license was suspended at the time. I did give a false name to try and get out of that arrest at that time."

¶ 14　　　　The trial court sentenced defendant to two years in prison. In setting forth its

decision, the court noted that defendant's criminal history was not "so bad" and indicated that it found the circumstances surrounding his prior felony offense to be "fairly insignificant."

¶ 15        This appeal followed.

¶ 16                            II. ANALYSIS

¶ 17                      A. Sufficiency of the Evidence

¶ 18        On appeal, defendant first challenges the sufficiency of the evidence against him. He argues the State failed to prove beyond a reasonable doubt that he possessed a firearm.

¶ 19        "The State has the burden of proving beyond a reasonable doubt each element of an offense." *People v. Gray*, 2017 IL 120958, ¶ 35. On appeal, when considering a challenge to the sufficiency of the evidence, a reviewing court "must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Harvey*, 2024 IL 129357, ¶ 19. In making that determination, the court is required to view the evidence in the light most favorable to the prosecution. *Id.* "All reasonable inferences are drawn in favor of a finding of guilt." *People v. Swenson*, 2020 IL 124688, ¶ 35.

¶ 20        Notably, "[t]he trier of fact determines the credibility of the witnesses, decides what weight to give their testimony, resolves conflicts in the evidence, and draws reasonable inferences from that evidence." *Id.* ¶ 36. "A trier of fact is not required to disregard inferences that flow normally from the evidence before it, nor must the trier of fact search out all possible explanations consistent with innocence and raise those explanations to a level of reasonable doubt." *People v. Eubanks*, 2019 IL 123525, ¶ 95. On review, this court does not retry the defendant or "substitute our judgment for that of the trier of fact on questions pertaining to the weight of the evidence or the credibility of witnesses." *People v. Conway*, 2023 IL 127670, ¶ 16. Further, "[a] criminal conviction will not be overturned unless the evidence is so unreasonable, improbable, or

unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *Id.*

¶ 21    Here, defendant was found guilty of UPWF. 720 ILCS 5/24-1.1(a) (West 2020). As charged, the State was required to prove beyond a reasonable doubt that defendant both possessed a firearm and had previously been convicted of a felony. *Id.*

¶ 22    Below, defendant stipulated to his prior felony conviction and, on appeal, he argues only that the evidence was insufficient to show that he possessed a firearm. Defendant contends (1) there was no direct evidence through fingerprints or a confession that he possessed the firearm recovered at the scene, (2) Harris's testimony was unreliable because his view was "obstructed" by the truck, (3) the police investigation was significantly flawed because Harris did not investigate his explanation that he had "picked up a T-shirt" and the officers did not question others at the scene regarding their knowledge of the firearm, and (4) the firearm was "discovered in an area that anyone could have accessed." We disagree and find that a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt.

¶ 23    At trial, Harris testified that upon his arrival at the scene, he observed a man next to a large pickup truck "place an item under the rear tire." He stated he could see under the truck, which he described as having "a lift kit on it," when he saw the man place an object on the ground. There is no dispute that the man Harris observed was defendant, and the recording from Harris's body-worn camera showed that defendant was dressed consistently with Harris's description of the man he saw "place an item." Evidence also showed there was no one else standing in the parking lot in defendant's vicinity. Immediately after Harris began speaking with defendant, he used his flashlight to illuminate the rear tire area of the truck and found a gun. As argued by the State, evidence of Harris's "very quick, targeted use of the flashlight" upon approaching defendant strongly corroborated his testimony about what he had observed.

¶ 24 Although defendant's fingerprints were not found on the firearm, the evidence at trial showed that the police found no latent fingerprints from anyone on the gun and that the lack of fingerprints on such an object was a common occurrence. Also, neither Harris nor the jury were required to accept defendant's self-serving explanation that he had been "pick[ing] up a T-shirt," particularly when Harris stated he had observed an object being "placed" and not retrieved. Again, the evidence presented also showed that defendant was the only person standing in the area where Harris observed an object being placed and where the gun was found.

¶ 25 We note "[t]he testimony of a single witness is sufficient to convict if the testimony is positive and credible, even where it is contradicted by the defendant." *Gray*, 2017 IL 120958, ¶ 36. Ultimately, Harris's testimony that he saw defendant placing an item by the rear tire of the truck, coupled with evidence that a firearm was discovered at that same location only moments later, was sufficient to establish defendant's actual possession of the firearm. See *People v. Givens*, 237 Ill. 2d 311, 335 (2010) ("Actual possession is the exercise by the defendant of present personal dominion over the illicit material and exists when a person exercises immediate and exclusive dominion or control over the illicit material, but does not require present personal touching of the illicit material."); *People v. Balark*, 2019 IL App (1st) 171626, ¶ 94 (stating "actual possession is proven by testimony that shows that the defendant exercised some form of dominion over the weapon, such as trying to conceal it or throwing it away").

¶ 26 Here, viewing the evidence in the light most favorable to the State, we find it was sufficient to establish defendant's guilt beyond a reasonable doubt. Accordingly, defendant's challenge to the sufficiency of the evidence lacks merit.

¶ 27 B. Constitutionality of the UPWF Statute

¶ 28 On appeal, defendant next argues that his conviction should be vacated because the

UPWF statute (720 ILCS 5/24-1.1(a) (West 2020)) is unconstitutional. He contends that under the analytical framework for evaluating firearms set forth by the United States Supreme Court in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), the statute violates the second amendment to the United States Constitution (U.S. Const., amend. II) both on its face and as applied to him.

¶ 29 "Statutes are presumed constitutional, and the party challenging the constitutionality of a statute has the burden of clearly establishing its invalidity." *People v. Villareal*, 2023 IL 127318, ¶ 14. If reasonably possible, a reviewing court must "construe the statute in a way that preserves its constitutionality." *People v. Bochenek*, 2021 IL 125889, ¶ 10.

¶ 30 "A constitutional challenge to a statute may be either facial or as applied." *People v. Hilliard*, 2023 IL 128186, ¶ 21. "A facial challenge requires a showing that the statute is unconstitutional under any set of facts, whereas an as-applied challenge is dependent on the particular facts and circumstances of the challenging party." *Id.* The constitutionality of a statute presents a question of law and is subject to *de novo* review. *Villareal*, 2023 IL 127318, ¶ 14.

¶ 31 The second amendment to the United States Constitution states that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. The United States Supreme Court has recognized that the second and fourteenth amendments (U.S. Const., amends. II, XIV) "protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense," as well as "an individual's right to carry a handgun for self-defense outside the home." *Bruen*, 597 U.S. at 8-10 (2022) (citing *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. Chicago*, 561 U.S. 742 (2010)).

¶ 32 "In *Bruen*, the Supreme Court announced a test for assessing the constitutional

validity of laws seeking to regulate conduct protected by the second amendment." *People v. Burns*, 2024 IL App (4th) 230428, ¶ 15. It held that (1) "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct" and (2) to justify its regulation "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17. "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.' " *Id.* Under *Bruen*'s second step, the government must only "identify a well-established and representative historical *analogue*, not a historical *twin*." (Emphases in original.) *Id.* at 30.

¶ 33                    1. *Facial Constitutional Challenge*

¶ 34        In asserting his facial constitutional challenge to the UPWF statute, defendant argues that under *Bruen*'s first step, his conduct—the act of possessing a handgun—was presumptively protected by the second amendment. He also contends that under *Bruen*'s second step, the State cannot show a relevant historical analogue that is similar to the UPWF statute and its prohibition on the possession of firearms by felons.

¶ 35        Since *Bruen*, Illinois courts have consistently rejected constitutional challenges like the one defendant makes to the UPWF statute and other similar statutes regulating firearm possession by felons. In *Burns*, 2024 IL App (4th) 230428, ¶ 21, this court held that "*Bruen*'s historical-tradition test" applied solely to regulations affecting the possession of firearms by law-abiding citizens and stated as follows:

>        "As a felon, [the] defendant, by definition, is not a law-abiding citizen. Thus, [the]
>        defendant cannot show that his conduct was presumptively protected by the second
>        amendment [(the first *Bruen* step)], and therefore, he does not fall within the scope

of *Bruen*. As a result, [the] defendant cannot show that [the UPWF statute] violates the second amendment on its face under the *Bruen* framework."

See also *People v. Gardner*, 2024 IL App (4th) 230443, ¶ 68 (relying on *Burns* and rejecting a defendant's facial challenge to the constitutionality of the UPWF statute); *People v. Huff*, 2025 IL App (4th) 240762, ¶ 16 (collecting cases from this court reaffirming our decision in *Burns*).

¶ 36 Additionally, even courts that have rejected the argument that felons fall outside the scope of those protected by the second amendment have concluded, under *Bruen*'s second step, that modern statutes regulating firearm possession by felons have relevant historical analogues. See *People v. Brooks*, 2023 IL App (1st) 200435, ¶ 100 (finding, under *Bruen*'s second step, that "both the founding-era historical record and Supreme Court precedent support the ability of our legislature to prohibit firearm possession by people who have demonstrated disrespect for legal norms of society" (internal quotation marks omitted)); *People v. Travis*, 2024 IL App (3d) 230113, ¶ 33 (finding the UPWF statute is "consistent with this nation's history of preventing potentially dangerous individuals from exercising the right to bear arms").

¶ 37 Accordingly, both this court and other appellate districts have addressed and rejected the precise facial challenge to the UPWF statute that defendant raises on appeal. We decline defendant's invitation to reconsider these prior decisions and find his facial challenge to the UPWF statute lacks merit.

¶ 38                    2. *As-Applied Constitutional Challenge*

¶ 39 As noted, defendant also raises an as-applied constitutional challenge to the UPWF statute under *Bruen*. He argues "there are no historical regulations that would have applied to a person in his situation," *i.e.*, a nonviolent felon. To support his lack of a violent history, defendant argues the record shows he had no violent convictions at the time of the underlying offense, that

the trial court described the circumstances of his prior adult felony conviction as "fairly insignificant," and that the charged offense "was not violent in nature."

¶ 40　　　　Initially, the parties dispute whether the record is sufficiently developed to determine the merits of defendant's claim. The State argues "[d]efendant's as-applied challenge is premature due to the lack of a sufficiently developed evidentiary record." Defendant argues that although his as-applied challenge is being raised for the first time on appeal, the facts and circumstances necessary to decide his claim are already in the record, *i.e.*, matters related to his criminal history and the circumstances of the charged offense. He points out that the State has failed to identify what, if any, facts are missing from the record that are necessary to resolve his as-applied constitutional challenge. Further, he asks that in the event this court finds the record is insufficient, we remand the matter to the trial court for further proceedings on the basis that his trial counsel was ineffective for failing to raise his as-applied challenge below.

¶ 41　　　　"Ordinarily, a defendant must present an as-applied constitutional challenge to a statute at trial in order to develop the record as it pertains to the specific facts and circumstances of his claim." *Brooks*, 2023 IL App (1st) 200435, ¶ 57 (citing *People v. Thompson*, 2015 IL 118151, ¶ 37). However, exceptions may be found where the record is sufficiently developed or the critical determinations involve "purely legal issues." *People v. Harris*, 2018 IL 121932, ¶ 44.

¶ 42　　　　Here, we find additional factual development for defendant's claim is unnecessary and that it may be resolved on a purely legal basis. Specifically, even assuming defendant's status as a nonviolent felon, he cannot establish his claim under *Bruen*.

¶ 43　　　　In *People v. Cadengo*, 2025 IL App (4th) 240568, ¶¶ 67-68, this court rejected a similar as-applied constitutional challenge to a felony firearm regulation by a defendant who relied on her alleged status as a nonviolent offender. In that case, the defendant argued that her second

amendment rights were violated by a sentencing statute pursuant to which she was ordered to relinquish her firearm owners identification card and any firearms she possessed due to her felony conviction. *Id.* ¶ 55. Even accepting the defendant's characterization of her offense as nonviolent, this court "decline[d] to distinguish between violent and nonviolent felonies." *Id.* ¶ 68. We noted that cases from this court upholding bans on the possession of firearms by felons did not distinguish between violent and nonviolent felonies but, instead, found "the second amendment applies only to 'law-abiding citizens.' " *Id.* We further stated as follows: "This indicates that individuals fall outside the protections of the second amendment not only because of felonious violence, but also because of their refusal to behave lawfully. Even nonviolent felons are excluded from the second amendment's protections." *Id.*; see *People v. Gray*, 2025 IL App (1st) 191086-B, ¶ 23 (rejecting an as-applied constitutional challenge to the armed habitual criminal statute and finding the *Bruen* test did not apply even when the defendant's prior felonies were nonviolent).

¶ 44      Additionally, in *Brooks*, 2023 IL App (1st) 200435, ¶ 105, the First District considered and rejected arguments similar to defendant's following a historical analysis under *Bruen*'s second step. Specifically, the defendant in that case raised an as-applied constitutional challenge to the armed habitual criminal statute, arguing it violated the second amendment because it "criminalized his simple possession of a firearm exclusively on the basis of his two prior *nonviolent* felony convictions." (Emphasis added.) *Id.* ¶ 55. After conducting an extensive analysis of the issue, the court concluded "that both the founding-era historical record and Supreme Court precedent support the ability of our legislature to prohibit firearm possession by people who have 'demonstrated disrespect for legal norms of society.' " *Id.* ¶ 100. It went on to hold that even though the defendant had been convicted of nonviolent felonies, "he [was] not a law-abiding citizen, and the armed habitual criminal statute that prohibit[ed] his possession of firearms [was]

constitutional as applied to him." *Id.*

¶ 45　　　　We find the reasoning of these prior cases applies and is persuasive. Accordingly, defendant's as-applied constitutional challenge also lacks merit.

¶ 46　　　　　　　　　　　　III. CONCLUSION

¶ 47　　　　For the reasons stated, we affirm the trial court's judgment.

¶ 48　　　　Affirmed.